350 So.2d 131 (1977)
Hayes WILLIAMS, Wardell Donahue, James C. Jones, Spencer Richardson, John D. Smith, et al., Plaintiffs-Relators,
v.
STATE of Louisiana, Governor Edwin Edwards, C. Murray Henderson, Warden of Angola, Mrs. Elayn Hunt, Director of Louisiana Department of Corrections, Defendants-Respondents.
No. 59254.
Supreme Court of Louisiana.
September 19, 1977.
Dissenting Opinion October 11, 1977.
*132 Luke J. Fontana, D. Brian Soignier, New Orleans, for plaintiffs-applicants.
William J. Guste, Jr., Atty. Gen., Michael C. Barron, Staff Atty., Baton Rouge, for defendants-respondents.
TATE, Justice.
The district court upheld the defendants' exception and dismissed this suit insofar as brought as a class action. We granted certiorari, 342 So.2d 868 (La.1977), to review the district court's ruling that the class action remedy, otherwise appropriate, was not available because of the variances in the damages resulting to each individual from the mass tort alleged.
*133 The petition alleges: A noon meal served to the inmates of the state penitentiary contained contaminated food substances. The contamination resulted from negligent and unsanitary kitchen preparation and conditions. Some 600 prisoners thereby suffered severe attacks of food poisoning, with stomach cramps, diarrhea, and vomiting. The interrogatories at issue in the proceedings indicate that the names of those prisoners who complained of illness resulting from the poisoning may be ascertained from the prison infirmary records.
The petition alleges that the incident occurred on June 22, 1975, some six months prior to the date the suit was filed. Five inmates, alleging that they will fairly insure the adequate representation of a class of persons too numerous to be practicably joined as parties, seek to institute this class action. They pray to recover individual damages on behalf of each of the approximately 600 inmates who suffered similar damages as a result of the same tort for which the defendants are responsible.
As is set forth more fully below, we find that the trial court's discretion was erroneously exercised to deny, for the reasons stated by that court, the class action remedy as available in the present litigation.

The Louisiana Class Action
The class action of the Louisiana Code of Civil Procedure, Articles 591-97, is adapted from Federal Rule of Civil Procedure 23 as originally promulgated in 1937. Official Revision Comment (b), La.C.Civ.P. art. 591. In framing Article 591, the redactors deliberately rejected the hybrid and spurious class actions of the federal rule. The article authorizes only the true class action. Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La.1975); La.C. Civ.P. art. 591, Official Revision Comment (c).
Articles 591(1)[1] and 592[2] are pertinent to our present query. They show that, in sanctioning class actions, the legislature has imposed the following requirements: (1) a class so numerous that joinder is impracticable; (2) the joinder as parties to the suit of one or more parties who are (a) members of the class, and (b) so situated as to provide adequate representation for absent members of the class; and (3) a "common character" between the rights of the representatives of the class and the absent members of the class.
When (as here) the first two requirements are met, the trial court's inquiry (in its determination of whether to exercise its discretion to allow or disallow the class action remedy sought) centers upon whether "the character of the right sought to be enforced . . . is . . . common to all members of the class". La.C.Civ.P. art. 591(1).
In Stevens, cited above, we noted that, even though the first two requirements are met, the "existence of a common question of law or fact does not by itself justify a class action" as involving a common character of the right to be enforced. 309 So.2d 151 (italics now supplied). We there noted that certain functional and pragmatic factors should be taken into consideration by the trial court, 309 So.2d 150-151, in aid of its ultimate determination of whether or not "the class action will be clearly more useful than other available procedures for definitive determination of a common-based right, . . . in the interests of the parties (including both the class and the opponent(s) to it) and of the efficient operation of the judicial system." 309 So.2d 151.
We summarized in Stevens the intertwined values of effectuating substantive *134 law, judicial efficiency, and individual fairness involved in allowing or disallowing a class action, as follows, 309 So.2d 151:
"In determining how the legislature intended the courts to define and apply the concept of allowing a class action to enforce rights with a common character, we are mindful of the basic goals or aims of any procedural device: to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort. Implicit, then, in decision that rights are of a common character is a consideration of the extent to which a clear legislative policy might be thwarted, or hampered in its implementation, by the lack of availability of the class action device.
"But this does not end the inquiry. Fairness to the parties demands at the least that the relationship between the claims of members of the class should be examined to determine whether it would be unfair to the members of the class, or to the party opposing the class, to permit separate adjudication of the claims. In determining whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions. Another factor to be considered, for example, is the size of the claims of the absent members of the class, for the greater the claim, the greater the interest of its owner in prosecuting it in a separate action."

Criteria for Allowance of a Class Action Here Met
Under the circumstances here shown, the values above set forth clearly favor allowance of a class action. The pragmatic criteria suggested by Stevens for the determination of the "common character" of the rights asserted for the class, 309 So.2d 150-51,[3] predominantly indicate that the class action is superior to other procedural methods available for the fair and efficient adjudication of the controversy, since the class action is otherwise appropriate *135 because of the numerous members of the class and because of the adequate representation assured by the plaintiffs instituting this class action.
The plaintiffs allege that approximately 600 prisoners sustained similar if not identical attacks of food poisoning arising from a single tortious incident. Similar if not identical damages, small in nature, were sustained by each. The evidence as to the tort itself must be identical for each claim. The medical evidence in most if not all of the claims will be founded in the same source, the prison infirmary and medical records.
Based on these circumstances, we find the class action allowable. The criteria we deem decisive include:
(1) Six hundred separate suits involve the danger of inconsistent determinations and of earlier separate adjudications with prejudicial effect upon subsequent separate litigation. See criteria 1(A), Stevens at 309 So.2d 151. Further, the interested parties appear to be so numerous that the courts would be unduly burdened by their separate suits or by their joinder or intervention by formal pleadings in non-class actions separately brought.
(2) The poverty and isolation of the prisoners, and the small amount of each individual's claim, pose a serious threat to the loss of individual substantive rights if the class action is not allowed. See Stevens criteria 1(B).
(3) The defendants resist liability for reasons generally applicable to the entire class. See Stevens criteria 2.
(4) The questions of law or fact common to the members of the class predominate over any questions affecting only individual members. See Stevens criteria 3. The plaintiffs allege that the entire class is similarly situated, and the defendant does not raise any special defenses against some members of the class which are not raised against others. In fact, the nature of this case suggests that such individual defenses as contributory negligence and assumption of the risk are wholly inapplicable. Not only do common questions predominate, there simply are no competing individual issues of law raised by the pleadings. Further (see also discussion of "Mass Torts" below), as we noted in Stevens, "that different recoveries are sought, based upon the same factual transaction and same legal relationship, was not intended to defeat a class action." 309 So.2d 149.
(5) The class action is the most appropriate procedural vehicle to process this dispute fairly and efficiently, not only because of the above factors, but also by reason of the following procedural factors:
(a) Due to the smallness of the recovery allowable to each plaintiff, as well as because of the difficulty of the inmates' otherwise securing legal representation, no substantial interest adverse to allowing a class action exists in favor of individual control by members of the class of separate action. See Stevens criteria 3A.
(b) The extent and nature of litigation already commenced by others concerning the controversy is not sufficient to indicate that allowance of a class action will defeat the purpose of the remedy to promote judicial economy and reduce the possibility of multiple litigation. See Stevens criteria 3B. In general, the lower the number of additional suits filed, the more useful is the class action. Here, although more than 600 inmates were allegedly affected by the contaminated food, only ten have filed suit in their individual behalf. A substantial number, if not all, of the remaining members are apparently content to have these representatives prosecute their claims.[4] Hence, the class action device is highly useful here; in one action, the court can process the claims of all but about 1.5% of the persons involved.
*136 (c) The desirability or not of concentrating the litigation of the claims in the particular forum of the class action does not, under these circumstances, present a factor of substantial weight in determining whether or not to allow a class action. See Stevens criteria 3C. The ten individual suits were likewise instituted in the same judicial district. (They, of course, may be consolidated for trial with the present. La. C.Civ.P. art. 1561.)
(d) The lack of difficulty to be encountered in managing the present litigation as a class action is clearly suggestive of allowing it in this case. See Stevens criteria 3D. The location of virtually all the witnesses and members of the class in the same vicinity, as well as the identity of the issue of liability in all claims, will facilitate a prompt, efficient, and relatively inexpensive single trial on this central issue of the litigation. Due to presence of virtually all members of the class in the same vicinity, minimal problems will be encountered in assuring reasonable notice of incidental episodes in the litigation, as well as in distributing any recovery, if awarded. As compared with other class actions, the present one seems extraordinarily "manageable".

Variations in Individual Recovery"Mass Tort"

Our trial brother disallowed the class action principally because the damages to each member of the class might vary considerably. As noted, this circumstance alone does not defeat the class action, see Stevens at 309 So.2d 149.
However, the variation in possible individual awards is properly taken into consideration in the determination of whether or not to allow a class action. In the first place, great differences of individual issues and evidence involve the possibility of fragmentation of the class action in effect into multiple lawsuits, to the prejudice of its manageability and the judicial efficiency contemplated by this procedural device. In the second place, where separate large individual claims are possible, the greater is the interest of the individual owners of the claim to prosecute a separate rather than a class action, and the lesser is the need for a class action to assure legal representation in the enforcement of substantive claims.
For the reasons earlier noted at more length, neither of these considerations justify the denial of a class action in the present case.
It is true that, because of these considerations, the federal advisory committee felt that "A `mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action" (italics ours), in recommending the 1966 revision of Federal Rule of Civil Procedure 23. 3 Moore's Federal Practice, Section 23.01 [10.3].[5]
Even for federal class actions, the observations of the advisory committee have been criticized as functionally unsound,[6] while in mass food poisoning cases arising from a single incident the federal courts have found the class action to be an appropriate procedural vehicle by which to determine liability for and allocation of damages to individual members of the class affected.[7]
*137 In the present circumstances, the non-availability of a Louisiana class action is thus not suggested by whatever are the pragmatic or federal-jurisdictional reasons which suggest that a federal class action is "ordinarily" inappropriate to determine liability and damages arising from a mass accident. To the contrary, for the reasons previously noted, the present class action seems to be the most appropriate procedural vehicle to determine these numerous minor claims arising from a single incident.

Due Process RequirementsNotice to Members of the Class
In a true class action, the judgment concludes all members of the class, whether formally joined as parties or not. Official Revision Comment (c), La.C.Civ.P. art. 591. Therefore, La.C.Civ.P. art. 597 provides: "A definitive judgment on the merits rendered in a class action concludes all members of the class, whether joined in the action or not, if the members who were joined as parties fairly insured adequate representation of all members of the class."
Thus, the members of the class historically were bound by the judgment, whether or not they had received actual notice of it. Likewise, since the class action is brought on behalf of all members of the class, its filing interrupts prescription as to the claims of all members of the class, whether they are noticed before or after the prescriptive delay has terminated.[8] 7 Wright & Miller, Section 1800 (1972); 3 Moore's Federal Practice, Section 23.90[3] (1977 revision).
Nevertheless, despite the lack of any statutory requirement for notice to other members of the class sought to be represented, federal (if not also state) due process requires that at some stage of the proceedings, preferably in the earlier stages of the litigation, all identifiable prospective members of the class be given reasonable notice of the pendency of the litigation and the opportunity to opt out of or join in the class action.[9]Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Comment, New Dimensions in the Louisiana Class Action, 36 La.L.Rev. 798, 811-12 (1976). This notice should be "`reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action * * *'", Eisen at 417 U.S. 174, 94 S.Ct. 2151, quoting from Mullane.
For reasons relating to judicial efficiency, enforceability of substantive claims, and fairness to the parties, the Louisiana legislature by Articles 591-97 has provided a true class action for those served by the courts of Louisiana. The legislature provided that the class-action judgment would be *138 binding upon all members of the class, although the legislature did not itself provide for (nor prohibit) the notice to members of the class now required by federal constitutional interpretations.
However, the Louisiana courts are constitutionally authorized to issue all writs, orders, and process in aid of their constitutional or legislative jurisdiction. La.Const. of 1974, Art. 5, Section 2. See also La.C. Civ.P. art. 191: "A court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law."
A Louisiana court is thus authorized to provide for such reasonable notice, under the circumstances, to identifiable members of a class sought to be represented in a class action as will entitle them to avail themselves of or to disclaim representation of their interests by the class action. This power should be exercised by a court in which a class action is properly filed, in order to effectuate both (1) the legislative intention that Louisiana courts hear and determine true class actions, with binding judgment conclusively determining by a single action numerous claims, and also (2) the constitutional due process requirement that all members of the class so bound receive such notice as is appropriate under the circumstances of the pendency of the litigation, including an opportunity to opt out of the class asserted.
The due process requirement of notice does not mandate formal service of process. The notice need only be such as is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane at 339 U.S. 314, 70 S.Ct. 657. As to individual claims of any magnitude, individual written notice may well be required for identifiable members of the class. See Eisen. As to others, such means of notice by publication (newspaper, bulletin board, etc.) may suffice as will under the circumstances reasonably apprise those interested of the action. See Mullane.
In the present case, unrepresented members of the class may be readily identified from the answers to the interrogatories as those who made complaints of illness to medical or prison authorities following the tainted meal.[10] Except for those who have filed separate suits (who thus presumably opted out of the class action) or those who have filed notice with the attorneys representing the named class-action plaintiffs, see footnote 4 (who thus have affirmatively selected this class action as the vehicle to present their claims, and a list of whom should be furnished the district court), the trial court upon the remand should provide for notice to each of the unrepresented identified members of the class.
These members should be notified, at their last known address, of the pendency of the class action and that, unless within a reasonable period to be set by the court (e. g., 30 to 60 days) they notify the court otherwise, their interest in the subject matter of this litigation will be concluded by the judgment rendered in this class action.[11] *139 The written notices need not be mailed; to save expenses of litigation, they may, for instance, be delivered to members of the class within the jurisdiction of the Department of Corrections through administrative channels or by hand-delivery or other reliable informal means of communication.[12]

Decree
For the reasons assigned, therefore, we reverse the dismissal and order the reinstatement as a class action of this suit. We remand it to the district court for further proceedings consistent with the views above set forth. All costs to await the final termination of this suit.
REVERSED AND REMANDED.
SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents and will assign reasons.
MARCUS, J., dissents.
SANDERS, Chief Justice (dissenting).
The 1975 decision of this court in Stevens v. Board of Trustees of Police Pension Fund, La., 309 So.2d 144 has been described as "judicial legislation." Comments, New Dimensions in Louisiana Class Actions, 36 La.L.Rev. 798, 812. In the present case, the majority extends that decision, embracing the spurious class action and adding a provision for service of notice upon members of the class. For the reasons hereinafter assigned, I disagree.
Five inmates of Louisiana State Penitentiary instituted this class action against the State and its officials in damages for more than 600 inmates, alleged to have suffered food poisoning from a meal served at the institution. The district court ruled that the class action was not maintainable under Louisiana procedural law. The Court of Appeal denied writs.
The case poses the question of whether or not a class action is available to plaintiffs in a mass tort under Louisiana procedural law.
Article 591 of the Louisiana Code of Civil Procedure sets forth the statutory authority for a class action:
"A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right."
Article 591, unchanged since its enactment in the 1960 Louisiana Code of Civil Procedure, has its source in the 1937 Federal Rule of Civil Procedure 23, which provided in pertinent part:
"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is
"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;
"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or
"(3) several, and there is a common question of law or fact affecting the several *140 rights and a common relief is sought."
Paragraphs (1), (2), and (3) of Federal Rule 23 (1937) are classified as "true," "hybrid," and "spurious," class actions respectively. 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1752 (1972); The Class ActionA Symposium, 1969, 10 B.C.Ind. & Com.L.Rev. 539, at 539.
In framing Article 591, the redactors deliberately rejected the hybrid and spurious class actions of the federal rule. The article authorizes only the true class action. Stevens v. Board of Trustees of Police Pension Fund, La., 309 So.2d 144 (1975); LSA-C.C.P. Art. 591, Official Revision Comment (c).
The true class action embodied in the Louisiana Code of Civil Procedure is a representative action that concludes the rights of absent members of the class. LSA-C. C.P. Art. 597. No notice to the absent members is required or authorized. If recovery is had, the court may award the representative parties reasonable litigation expenses, including attorney's fees. LSA-C.C.P. Art. 595.
Having concluded that only a true class action is maintainable under Louisiana law, the next determination is whether or not mass tort claims fall within the parameters of a true class action. Since no notice to class members is authorized, the extension of our procedural law beyond the true class action would raise serious constitutional questions. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Comments, New Dimensions in Louisiana Class Actions, 36 La.L.Rev. 798, 811-812.
In Stevens v. Board of Trustees of Police Pension Fund, supra, the main opinion[1] correctly states:
"We should note once again that existence of a common question of law or fact does not by itself justify a class action, even though the parties be too numerous to be joined practicably and even though adequate representation is afforded by the typical member or members of the class who are parties to this suit. To this extent, the criteria of the revised Federal Rule 23 had been rejected by our legislature." [at p. 151]
Normally, as Article 591 states, the right sought to be enforced must be common to all members of the class or secondary. The term common includes the Louisiana joint right or obligation. See Art. 591, Official Revision Comment (b). The class members' rights are so closely interrelated that actual notice and an opportunity to be heard are not crucial to concluding the rights of the absent members.
Prior to the 1966 revision of Federal Rule 23, the prevailing rule in the federal courts was that mass tort claims were categorized as spurious class actions, because the rights of the absent class members could not be conclusively determined, and the absent members were not bound by an adverse judgment. Pennsylvania R. Co. v. United States, 111 F.Supp. 80, 90-92 (D.N.J.1953); Airplane CrashClass Action, 28 A.L.R. Fed. 719 (1976); Note, Mass Accident Class Actions, 60 Cal.L.Rev. 1615 (1972); Note, Procedural Devices for Simplifying Litigation Stemming from a Mass Tort, 63 Yale L.J. 493, 513 (1954).
When the federal class action was liberalized in 1966, the Advisory Committee noted:
"A `mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried. Notes of Advisory Committee on Rule 23, 1966 Amendment, 28 U.S.C.A. p. 299 (1972)."
Despite the Advisory Committee's view, some lower federal courts have maintained *141 class actions in mass tort cases, at least as to specific issues where uniformity of result is certain. See, e. g., Hernandez v. Motor Vessel Skyward, 61 F.R.D. 558 (D.C., Fla. 1973) aff'd without opinion 507 F.2d 1278 (CA5, Fla.); Anno. Airplane CrashClass Action, 28 A.L.R.Fed. 719, 711-723. The federal rule, however, requires that "the best notice practicable" be given in all expansive class actions under Federal Rule 23(b)(3). See Federal Rule 23(c)(2).
Unlike the federal rule, the Louisiana procedural law governing class actions has not been expanded. As we have noted, it was based upon the true class action of the earlier federal rule. Hence, the earlier holdings of the federal courts that mass tort claims form a spurious class action are most persuasive.
A class action based upon mass tort claims is an amorphous procedure, frequently degenerating into multiple law suits. In the present mass tort, at least ten other damage suits have been filed. As the trial judge noted, a motion for consolidation is pending. In my opinion, the majority does violence to the codal article, carefully formulated by the Louisiana State Law Institute and adopted by the Legislature. As the redactors noted, "There is no need for either the hybrid or the spurious class action in Louisiana." Art. 591, Official Revision Comments C.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I join the Chief Justice in his well-reasoned dissent. See also my dissent in Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La. 1975).
NOTES
[1] La.C.Civ.P. art. 591 provides: "A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is: (1) Common to all members of the class * * *."
[2] La.C.Civ.P. art. 592 provides: "One or more members of the class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members."
[3] Similar (but more detailed) criteria for allowance or disallowance of a class action are set forth by the Uniform Class Actions Act [Rule], Section 3(a) (National Conference of Commissioners on Uniform State Laws (1976)) (reprinted at 12 Uniform Laws Annotated, Supp. (1977) p. 10):

"In determining whether the class action should be permitted for the fair and efficient adjudication of the controversy . . . the court shall consider, and give appropriate weight to, the following and other relevant factors:
(1) whether a joint or common interest exists among members of the class;
(2) whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class;
(3) whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;
(4) whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole;
(5) whether common questions of law or fact predominate over any questions affecting only individual members;
(6) whether other means of adjudicating the claims and defenses are impracticable or inefficient;
(7) whether a class action offers the most appropriate means of adjudicating the claims and defenses;
(8) whether members not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions;
(9) whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding;
(10) whether it is desirable to bring the class action in another forum;
(11) whether management of the class action poses unusual difficulties;
(12) whether any conflict of laws issues involved pose unusual difficulties; and
(13) whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class."
[4] The showing made before us indicates, for instance, that at least 91 inmates notified the attorneys for the representative plaintiffs of their desire not to be excluded from the benefits of this class action. They did so within six months of the filing of the suit (i. e., within the prescriptive year), thus relying upon this class action as the vehicle to advance their claims.
[5] For instance, in diversity cases a federal class action is not available unless the separate and distinct claim of each member of the class exceeds the $10,000 jurisdictional limit. Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). See Theis, Zahn v. International Paper Co.: The Non-Aggregational Rule in Jurisdictional Amount Cases, 35 La.L.Rev. 89 (1974).
[6] 7 Wright & Miller, Federal Practice & Procedure, Section 1783 (1972); Comment, Mass Accident Class Actions, 65 Cal.L.Rev. 1615 (1972); Comment, Damages in Class Actions: Determination and Allocation, 10 Boston College Ind. & Comm.Law Review 615, 617-18 (1968).
[7] Bentkowski v. Marfuerza Compania Maritima, S. A., 70 F.R.D. 401 (E.D.Pa.1976); Hernandez v. Motor Vessel Skyward, 61 F.R.D. 558 (S.D.Fla.1973), affirmed without opinion, 507 F.2d 1278 (5th Cir. 1974).

In McDonnell Douglas Corp. v. United States District Court, 523 F.2d 1083 (9th Cir. 1975), (airplane crash killing 335 passengers) and La Mar v. H & B Novelty & Loan Company, 489 F.2d 461 (9th Cir. 1973) (class action for Truth in Lending Violations against pawnbrokers other than that defendant with whom the representative plaintiffs had done business), a federal appellate court held that a class action was not an appropriate procedural vehicle to assert the claims respectively advanced. See also Causey v. Pan American World Airways, Inc., 66 F.R.D. 392 (E.D.Va., 1975) (96 passengers, including 17 Americans, only two of whom were forum residents, killed in airplane crash in Indonesia). Due to the factual distinctions noted, these decisions cited to us are not remotely persuasive that a class action is inappropriate for the present litigation.
[8] We therefore do not find persuasive the defendants' argument that our recognizing the present suit as a class action will resurrect prescribed claims. To the contrary, our denial of class action status will deprive of their day in court those members of the class who relied upon the filing of the present suit to advance their claims, instead of filing separate actions. See, e. g., footnote 4 above. Further, this suit was filed as a class action some six months before the prescriptive year had tolled; if the action had been facilitated instead of obstructed, in all probability all members of the class would have been identified before the year expired (see text below).
[9] Federal Rule 23 (1938), upon which our own class action code articles are patterned, see Official Revision Comment (b), La.C.Civ.P. art. 591, did not initially require notice to unrepresented members of the class bound by the class-action judgment. However, in 1966, because of due process considerations indicated by United States Supreme Court decisions, it was amended to provide for "the best notice practicable under the circumstances", FRCP 23(c)(2), see also 23(d)(2). See advisory committee report as to latter amendment, 3 Moore's Federal Practice, Section 23.01 [12.2] (1977 revision).
[10] It may reasonably be presumed that de minimis damages were suffered by those who did not do so, if they did not either file separate suits or else give notice (see footnote 4) of their intention to be served by this class action.
[11] For instance, the Uniform Class Actions Act [Rule], cited at footnote 3, provides, Section 7(a), that the court, after hearing, shall direct the giving of notice to the class, and Section 7(b), that the "notice shall include

"(1) a general description of the action, including the relief sought, and the names and addresses of the representative parties;
(2) a statement of the right of a member of the class under Section 8 to be excluded from the action by filing an election to be excluded, in the manner specified, by a certain date;
(3) a description of possible financial consequences on the class;
(4) a general description of any counterclaim being asserted by or against the class, including the relief sought;
(5) a statement that the judgment, whether favorable or not, will bind all members of the class who are not excluded from the action;
(6) a statement that any member of the class may enter an appearance either personally or through counsel;
(7) an address to which inquiries may be directed; and
(8) other information the court deems appropriate."
[12] Cf. Section 7(c), Uniform Class Actions Act [Rule], cited footnote 3: "The order shall prescribe the manner of notification to be used and specify the members of the class to be notified. In determining the manner and form of the notice to be given, the court shall consider the interests of the class, the relief requested, the cost of notifying the members of the class, and the possible prejudice to members who do not receive notice."
[1] The main opinion was subscribed by three members of the Court.