939 So.2d 478 (2006)
Robert Andrew BOURGEOIS; Dominick Epifano Danna Gerald Ray Kelley, Sr.; and Phil Carl Robichaux, et al.
v.
A.P. GREEN INDUSTRIES, INC., et al.
No. 06-CA-87.
Court of Appeal of Louisiana, Fifth Circuit.
July 28, 2006.
*482 Mickey P. Landry, Frank J. Swarr, David R. Cannella, New Orleans, Louisiana, for Plaintiff/Appellant.
Steven J. Irwin, Blaine A. Moore, Louis O. Oubre, Madeleine Fischer, New Orleans, Louisiana, Leon Gary, Jr., William L. Schuette, Jr., Baton Rouge, Louisiana, Gary A. Lee, Richard M. Perles, Carl J. Hebert, Kirk N. Aurandt, New Orleans, Louisiana, Brian C. Bossier, Edwin A. Ellinghausen, III, Erin H. Boyd, Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Facts and Procedural History
Plaintiffs, former employees of Avondale Shipyards, Inc. ("Avondale"), initiated this suit on behalf of a proposed class of current and former Avondale employees who have allegedly been significantly exposed to asbestos prior to 1976 during their employment and who have not been diagnosed with an asbestos-related disease. Named plaintiffs are former Avondale employees, Robert Andrew Bourgeois ("Bourgeois"), *483 Phil Carl Robicheaux ("Robicheaux"), and Dominick Danna ("Danna"). Plaintiffs initially filed suit against defendants Avondale, various Executive Officers of Avondale, and several manufacturers, sellers, and/or suppliers of asbestos and asbestos containing products. Plaintiffs subsequently dismissed all defendants with the exception of Avondale and the various Executive Officers of Avondale. Defendants then filed third-party demands against the several manufacturers, sellers, and/or suppliers of asbestos and asbestos-containing insulation products. Plaintiffs state that as a result of this alleged significant exposure to asbestos, they now need regular medical examinations for the early detection and treatment of possible latent asbestos-related diseases. Plaintiffs seek the establishment of a judicially administered fund for the costs of medical monitoring.
The trial court granted defendants' exceptions of no cause of action and this Court affirmed. The Louisiana Supreme Court granted certiorari and reversed, finding that the reasonable cost of medical monitoring is a compensable item of damage under La. C.C. art. 2315[1], provided plaintiffs prove certain criteria.[2] Subsequently, Plaintiffs filed a Motion for Summary Class Certification, which the trial court denied.[3] For the following reasons, we affirm.
The trial court held a certification hearing that revealed the following testimony:
Robicheaux, a 61 year old former employee of Avondale, testified that he worked at Avondale from 1962-1972. He stated that he worked primarily in the warehouses of the Westwego and Main Yards at Avondale that supplied all of the asbestos containing products to the shipyard. He stated he handled asbestos-containing products directly for approximately six years. Sometimes he would leave the warehouse and work directly on the ships. Robicheaux testified that he would like to be monitored for asbestos related diseases and that he understood that he would be a class representative for other Avondale employees similarly situated.
Danna, a 61 year old former employee of Avondale, testified that he worked at Avondale from 1965-1972. He stated that he primarily worked in the Main Yard at Avondale, on Wet Dock # 3 mainly and a brief time on Wet Dock #1, as a tacker welder then as a shipfitter, and then as a supervisor. He also stated that he performed *484 many duties on the ships in all areas of the ships, such as the engine rooms and on the main decks.
Danna further testified that, prior to his employment with Avondale, he worked for a boat company, where he was also exposed to asbestos. Further, Danna smoked one and a half packs of cigarettes a day for approximately 12-15 years. Danna testified that he does not smoke now and that he receives yearly chest x-rays. Danna testified that he is willing to be a class representative.
Danny Joyce, a safety consultant, testified and was accepted as an expert in industrial hygiene and in the use and regulation of asbestos products. Mr. Joyce testified that he worked for Avondale from 1980-1991 as an industrial hygienist and then as the Director of Health and Safety. He stated that his job at Avondale consisted of air monitoring for presence of asbestos fibers, conducting interviews for job hazard analysis, and helping Avondale comply with the current Occupational Safety and Health Administration standards. Mr. Joyce testified that the levels for permissible asbestos exposure changed drastically over the years from 5 million particles per cubic foot in the 1960's to 2 fibers per cubic centimeter by 1976.
Mr. Joyce testified that Avondale is approximately half a mile wide and approximately three-quarters of a mile in length. He stated that there are separate facilities and divisions within Avondale and that the different facilities at Avondale had different levels of exposure to asbestos, if any, and handled different asbestos products. Mr. Joyce testified that he conducted interviews of Avondale employees to determine which employees were eligible to participate in the medical surveillance program that Avondale provides for those employees who may be exposed to greater than permitted levels of asbestos on the average of 30 days out of the year. He stated that the exposure would differ greatly among the different tasks, job descriptions, and job locations of the employees. Mr. Joyce testified that because of the many variables that may affect exposure levels, a series of questions would need to be answered to determine if someone would have been exposed to asbestos. For example, Mr. Joyce testified that different welders work in different areas and different stages of the shipbuilding process. He testified that likely only the welders working during the final stages of the shipbuilding process would have been exposed to asbestos. Similarly, some pipefitters may have been exposed to asbestos containing products, but only pipefitters who worked in certain facilities that carried those products. Further, while insulators would be the most likely to have been exposed to asbestos, some divisions or facilities of Avondale only used fiberglass insulation, so those insulators may not have been exposed to asbestos at all. Avondale has several warehouses, some of which stored asbestos-containing products and some of which contained no asbestos-containing products. Therefore, to determine if a warehouseman employed by Avondale was exposed, it would need to be determined which warehouse and at which facility he worked.
Mr. Joyce testified that the environment at Avondale is a dynamic one and that at any given time there would be different people of many crafts working on different ships being constructed in different places using different materials. Mr. Joyce testified that he would not know how to determine if an employee was exposed to significant levels of asbestos, if any, without conducting a full interview to determine their craft, daily tasks, which facility or facilities he/she worked, and the relevant employment period for that employee.
*485 Dr. Jones and Dr. Emory, experts in pulmonary medicine, testified that "significant exposure" is not a known medical term to measure asbestos exposure. Further, their testimony revealed that a common person may not understand what "significant exposure" is because one may not know when an exposure becomes "significant". They testified that this factor would make it difficult for one to know if he or she would fit the description of the class.
Following the certification hearing, the parties requested time to review the transcripts and to file post-hearing memoranda. The trial judge took the matter under advisement and scheduled oral arguments. On January 5, 2005, the parties appeared before the court for oral arguments. Thereafter, the trial judge gave his ruling and oral reasons for judgment, denying Plaintiffs' Motion for Summary Class Certification.
Standard of Review
The trial court is granted wide discretion in determining class action certification and such decision shall not be overturned on appeal absent finding of manifest error or abuse of discretion. Clement v. Occidental Chemical Corporation, 97-246 (La.App. 5 Cir. 9/17/97), 699 So.2d 1110, 1114; Schexnayder v. Entergy Louisiana, Inc., 04-636 (La.App. 5 Cir. 3/29/05), 899 So.2d 107, 113. Plaintiffs assert in their brief that the trial judge applied the incorrect law, and, therefore, this court should conduct a de novo review. Plaintiffs note that the trial judge applied the post-amendment version of La. C.C.P. art. 591. Acts 1997, No. 839, § 1 revised the class action provisions and the legislation amended La. C.C.P. art. 591. The provisions of the Act are only applicable to actions filed on or after July 1, 1997. Because this suit was filed in 1996, the pre-amendment law is applicable to this case. Plaintiffs further assert that the trial judge misinterpreted the findings of this Court's decision in Bourgeois v. A.P. Green Industries, 02-713 (La.App. 5 Cir. 2/25/03), 841 So.2d 902.
Where a legal error of a trial court interdicts the fact-finding process, the manifest error standard is no longer applicable. Hughes v. New Orleans Saints & LWCC, 05-712 (La.App. 5 Cir. 2/27/06), 924 So.2d 1086. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Id. at 1091. Legal errors are prejudicial when they materially affect the outcome or deprive a party of substantial rights. Id. When a legal error of the trial court materially affects the outcome or deprives a party of substantial rights, the appellate court conducts a de novo review. Id. De novo review should be limited to consequential legal errors. Succession of Cyprian A. Sporl, Jr., 04-1373 (La.App. 4 Cir. 4/6/05), 900 So.2d 1054, 1058.
Analysis
Interpretation of Previous Bourgeois Decision
Regarding the trial judge's interpretation of this Court's previous decision, we note that the trial judge misinterpreted the findings of Bourgeois[4]. The trial *486 judge spoke incorrectly when he stated that only those workers employed before 1952 would have a cause of action. This Court in Bourgeois v. A.P. Green Industries, 02-713 (La.App. 5 Cir. 2/25/03), 841 So.2d 902, found that, in addition to those workers employed prior to 1952, those workers employed prior to 1976 also have a negligence claim against Avondale's Executive Officers. However, this finding applies to the numerosity requirement; the trial court found Plaintiffs satisfied this requirement and, therefore, the misinterpretation does not substantially affect the outcome of the case or deprive any party of substantial rights.
Analysis of Class Action Articles (pre and post amendment)
The following analysis of the class certification requirements pre and post amendment will demonstrate that the trial judge did not apply incorrect principles of law and that the application of the post-amendment article in this case did not prejudice the outcome or deprive the parties of any substantial rights.
The narrow issue before this court is class certification. The Louisiana Supreme Court has extensively interpreted our class action certification Articles in several decisions. See Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.9/9/97), 703 So.2d 542, 547-548; Banks v. New York Life Insurance Co., 98-0551 (La.7/2/99), 737 So.2d 1275; Stevens v. Board of Trustees, 309 So.2d 144 (La.1975); McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984); Williams v. State of Louisiana, 350 So.2d 131 (La.1977). "The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court." Ford, 703 So.2d at 545, citing Herbert B. Newberg & Alba Conte, 1 Newberg on Class Actions, § 1.01, p. 1-2, 1-3 (3d ed.1992). The purpose of the class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are "similarly situated"; the objective of the action is the achievement of economies of time, effort, and expense. Id.; Clement, 699 So.2d at 1113.
The Louisiana Supreme Court has interpreted pre-amendment La. C.C.P. articles 591 and 592[5] to find that the basic requirements for the availability of class action certification are:

*487 1. A class so numerous that joinder is impracticable (the numerosity requirement), and
2. The joinder as parties to the suit one or more persons who are
(a) members of the class, and
(b) so situated as to provide adequate representation for absent members of the class (the adequate representation requirement), and
3. A "common character" among the rights of the representatives of the class and the absent members of the class (the commonality requirement).
See McCastle, 456 So.2d at 616; Stevens, 309 So.2d at 148-150; Williams, 350 So.2d at 133.
Therefore, a class action could be certified only if the numerosity, adequacy of representation, and commonality requirements were met. All three elements must be satisfied to achieve class certification and it is well settled that it is plaintiffs' burden to prove each element, by a preponderance of the evidence. Clement, 699 So.2d at 1113.
The first requirement is "numerosity." This requirement is not satisfied simply by alleging a large number of potential claimants. Id. While all potential claimants do not need to be identified, a definable group of aggrieved persons should be established. Id. A person should be able to determine readily if he or she is a member of the class. A class definition is the framework against which the court can apply the statutory requirements to determine if certification is appropriate. "The purpose of the requirement that the class be capable of definition is to ensure that the proposed class is not amorphous, vague, or indeterminate." Clement, 699 So.2d at 1113. Therefore, as part of the numerosity requirement, the requirement that the class be capable of definition was formed jurisprudentially.
The second requirement serves to ensure adequate representation of the absent class members by requiring that one or more of the class members will represent the interests of the entire class adequately. This element requires that the proposed class representatives prove that their claims are "a cross-section of, or typical of, the claims of all class members." Billieson v. City of New Orleans, XXXX-XXXX (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 155.
The third requirement is that plaintiffs must establish that a "common character" exists; plaintiffs must show that questions of law or fact common to the members of the class predominate over any questions affecting the individual class members. However, the existence of common questions of law or fact alone does not justify class action certification. Banks, 737 So.2d at 1280.
In addition to the requirements listed in La. C.C.P. art. 591 and 592, the Louisiana Supreme Court, through the aforementioned decisions, provided additional factors that a trial court should consider when determining if a proposed action is proper for class certification, such as those factors listed in Federal Rule 23(b).[6]McCastle, 456 So.2d at 617. In addition to *488 the factors presented in Federal Rule 23(b), the Court also suggested The Uniform Class Action Act, Section 3(a) for use and guidance in determining proper class certification.[7]Id.
Another consideration for class certification is that "[t]he evidence as to the tort itself must be identical for each claim." Williams, 350 So.2d at 135. If the evidence presented will likely require plaintiff-by-plaintiff adjudication of liability issues, thereby leading to a "mini-trial" for each plaintiff, the court must consider whether that issue militates against a finding *489 of common character and the superiority of the class action procedure. Banks, 737 So.2d at 1281.
Acts 1997, No. 839, § 1 amended the class action certification articles. The amended article 591(A) provides:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
La. C.C.P. art. 591(A) requires numerosity, commonality, typicality, adequate representation, and a class that may be objectively defined. All requirements provided in paragraph (A) must be satisfied to achieve class certification.[8] The pre-amendment article, as stated above, also required that the party seeking certification satisfy the numerosity, commonality, and adequate representation requirements. Although the pre-amendment article did not specifically provide for a typicality requirement, jurisprudence suggested that the proposed *490 class representatives must prove that their claims are "a cross-section of, or typical of, the claims of all class members." Billieson v. City of New Orleans, XXXX-XXXX (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 155 (cited with approval in Defraites v. State Farm, 03-1081 (La.App. 5 Cir. 1/27/04), 864 So.2d 254, 259).
Plaintiffs argue that the applicable law in this case does not require that the class be objectively defined as required by La. C.C.P. art. 591 in its current form. The current article provides that "[T]he class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case." As discussed previously, the pre-amendment law jurisprudentially formed the requirement that the class be defined and "[T]he purpose of the requirement that the class be capable of definition is to ensure that the proposed class is not amorphous, vague, or indeterminate." Clement, 699 So.2d at 1113. Therefore, the pre-amendment law also required that the proposed class be capable of definition. The current requirement also states that the class is to be defined for the purpose of the conclusiveness of any judgment that may be rendered in the case. This requirement complies with the main purpose of the class action procedure: to achieve a res judicata effect for all potential class members. The pre-amendment law is consistent with the post-amendment requirement that the class be capable of definition.
Further, the amended portions of article 591 more closely track the language of Federal Rule 23(b). The Louisiana Supreme Court has encouraged lower courts to follow Federal Rule 23(b) as a guide when determining if class certification is appropriate. The amended article 591 also appears to codify much of the Louisiana jurisprudence, as set forth in McCastle v. Rollins. See La. C.C.P. art. 591, Editor's Notes. Therefore, the post-amendment requirements provided in La. C.C.P. art. 591(A) are also required under the pre-amendment version of the article, applicable in this case.[9] Because the pre-amendment requirements applicable in this case are also required in the current article cited by the trial judge, we find that the application of the current La. C.C.P. art. 591(A) did not affect the outcome or prejudice the substantive rights of any party. Therefore, we do not conduct a de novo review of the trial court's ruling denying class certification. Rather, the trial court is afforded great discretion in class certification and, unless it has committed manifest error or abuse of discretion, we must affirm its decision. Clement, 699 So.2d at 1114.
The Findings of the Trial Court
The trial judge addressed each requirement separately. First, he found that the Plaintiffs satisfied the numerosity requirement because of the number of workers employed by Avondale since 1952 who may have been significantly exposed to asbestos; however, the trial judge found that Plaintiffs failed to meet their burden of proof in satisfying the other requirements.
Second, the trial judge found that the Plaintiffs did not satisfy the commonality requirement, finding that individual issues predominated in this case. The trial judge noted Ford v. Murphy Oil, a Louisiana *491 Supreme Court case. In Ford v. Murphy Oil, U.S.A., Inc., plaintiffs, individuals and property owners, sought class certification for damages allegedly resulting from emissions of pollutants from four petrochemical plants near the residents' area. The emissions in Ford were from four different chemical plants in the area and the exposure occurred over several years.[10] The Louisiana Supreme Court in Ford denied class certification finding that "each class member will necessarily have to offer different facts to establish that certain defendants' emissions . . . caused them damage . . . [T]he causation issue is even more complicated . . . considering each plaintiff's unique habits, exposures, length of exposures, medications, medical conditions, employment, and location of residence or business." The Court concluded stating that "This case simply strays too far from the `true' class action that the Legislature intended to allow." Ford, 703 So.2d at 549. The Court found that there were too many individual issues that complicated the action and made class certification inappropriate.
The trial judge found the instant case similar because the court would need to consider the circumstances of each employee's working environment. Further, the judge states that the question of whether a former employee had been significantly exposed to asbestos was not a common one, but an individual one; each plaintiff would have to prove that he/she satisfies the criteria to state a valid cause of action for medical monitoring as set forth by the Louisiana Supreme Court in Bourgeois.[11] The trial judge notes the expert testimony of Dr. Jones that discussed the evidence needed from each plaintiff to prove entitlement to medical monitoring. Dr. Jones testified that "what they did and where they did it is important." The trial judge agreed that the specific job and location of each employee is important. Redefinition of the proposed class to several smaller, more specifically defined classes may address this issue. The trial judge found that the class action procedure would not be superior to joinder of individual claims in this case because each plaintiff would need to prove certain criteria and, therefore, individual questions predominated over any common questions of law or fact.
Thirdly, the trial judge found that Plaintiffs did not satisfy their burden of proof with regard to the typicality requirement and the adequate representation requirement. Regarding typicality, the trial judge found that, based on the previous Bourgeois decision of this Court, the remedies for each plaintiff may differ, depending on the time period of employment.[12] Therefore, each plaintiff's claim would not be typical of the entire class as defined *492 because of the different remedies determined by the time period of employment. Regarding the adequate representation requirement, the trial judge states that Bourgeois, the first named plaintiff in this case, was not present at the certification hearing; the trial judge found Bourgeois inadequate as a class representative. Further, the trial judge notes that the named Plaintiffs, Robicheaux, Danna, and Bourgeois, are not representative of any workers employed by Avondale prior to 1952. Therefore, because all potential class members were not represented, the trial judge found, and this Court agrees, that the Plaintiffs did not fulfill the adequate representation requirement.
Lastly, the trial judge found that the class, as defined, did not satisfy the class definition requirement. In his oral reasons, the trial judge expressed concern that, as it is defined, an ex-worker may not be able to readily determine if he/she is a member of the class. He found that the term "significant exposure" is not a definable term or a term associated with asbestos.[13] The trial judge stated that the term makes it difficult to distinguish the members of the class from the thousands of former Avondale workers who may not have been exposed; further, he found that ex-workers may have difficulty understanding whether they are members of the proposed class. The trial judge also expressed concern regarding the res judicata effect of any judgment made in this case and the possibility of that judgment infringing upon rights of workers who may not enter the class because they do not understand the criteria. The purpose of the class definition requirement is to ensure that the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if he/she is a member of the class. Clement, 699 So.2d at 1113. The trial judge found that the Plaintiffs failed to satisfy the definition requirement. Again, multiple classes more narrowly and specifically defined may overcome this issue.
Review of Judgment
Class action is proper in those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. Id. at 1280. The party seeking certification must show that the class action procedure is superior to other adjudicatory methods. Id.
The trial court discussed Mr. Joyce's testimony that each plaintiff would need to prove "significant exposure," which may require different evidence from each plaintiff of when and where he or she worked; further, the specific time of employment may be necessary to determine what a "significant exposure" was at the time of plaintiff's employment, as the permissible levels changed over the years.
The testimony in the case before us revealed that each facility at Avondale used different asbestos containing products, which different third-party defendants used or provided, at different times. Avondale is a dynamic company with several different facilities that contain warehouses, several shops of sheet metal and other materials, loading docks, offices, many ships that are worksites, and several different shipbuilding yards. The job description of each employee would need to be examined to discover which products he *493 or she may have been exposed to and if the exposure could be labeled "significant", so to necessitate medical monitoring. Further, the different time periods of employment will determine which possible remedy applies for each employee and may affect the liability of each defendant. Moreover, other factors may become relevant and affect the liability issues, such as a history of cigarette smoking and past similar employment.
The trial judge found that Plaintiffs failed to meet the requirements for class certification and determined that the class action procedure was not superior to other adjudicatory methods. Applying the factors set forth in La. C.C.P. articles 591-592 and Federal Rule 23 and the jurisprudence interpreting our state articles and the federal rule, we find that, as the class is presently defined, the trial judge did not abuse his discretion in denying Plaintiffs' Motion for Summary Class Certification. Decertification will not keep these plaintiffs out of court because individual actions, consolidated actions, or a series of more specifically defined class actions are still available.
Evidentiary Rulings
The Plaintiffs assign as errors of the trial court three evidentiary rulings. First, Plaintiffs state that the trial court erred in denying to admit into evidence the deposition of named plaintiff, Bourgeois, who did not attend the class certification hearing. Plaintiffs stated to the court that Bourgeois is blind and could not get transportation to the hearing because he now lives in Ocean Springs, Mississippi. Plaintiffs did not provide an affidavit presenting these facts; Plaintiffs simply told the trial court that, according to the internet, Bourgeois' residence is 103 miles from the courthouse.
La. C.C.P. art. 1450 addresses the use of depositions and provides:
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
(a) That the witness is unavailable;
(b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition
Therefore, the deposition of a party may be used if that party can show that he or she meets the criteria set forth in La. C.C.P. art. 1450. However, hearsay evidence may not be considered in the judicial inquiry of a witness' unavailability. Reine v. Grillot, 505 So.2d 1179 (La.App. 5 Cir.1987); Wheeler v. New Orleans Public Service, Inc., 573 So.2d 1237 (La.App. 4 Cir. 1991); Bland v. Interstate Fire and Casualty Co., 311 So.2d 480 (La.App. 4 Cir.1975). A party is not legally "unavailable" as a witness simply because he eschews the trial. Hoy v. Gilbert, 98-1565 (La.3/2/99), 754 So.2d 207; Dickens v. Commercial Union Ins. Co., XXXX-XXXX (La.App. 1 Cir. 6/23/00), 762 So.2d 1193. Additionally, a party whose absence from trial is attributable to his choice to be out of state on the date of trial is considered to have procured his own absence. Wehbe v. Waguespack, 98-475 (La.App. 5 Cir. 10/28/98), 720 So.2d 1267, writs denied, 98-2907 (La.1/15/99), 736 So.2d 211 and 98-2970 (La.1/15/99), 736 So.2d 213; Bruins v. United States Fleet Leasing, Inc., 430 So.2d 386 (La.App. 3 Cir.1983).
The trial court has much discretion in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed upon review in the absence of an abuse of that discretion. State in the Interest of Bordelon v. Guichard, 94-1795 (La.App. 1 Cir. 5/5/95), 655 So.2d 1371, 1378, writ denied, *494 95-1405 (La.9/15/95); 660 So.2d 454. The trial court further has wide discretion in determining a witness' unavailability. Flannery v. Tastee Donuts, Inc., 529 So.2d 1360 (La.App. 5 Cir. 1988).
Bourgeois is the first named plaintiff who claims a desire to represent absent members of a proposed class of people in this case. The only evidence presented to the court to prove Bourgeois' unavailability was hearsay evidence that the Plaintiffs' attorney presented. Because the statements made by Plaintiffs' attorney are not sufficient evidence and may not be considered by the trial judge, we find the trial judge did not abuse his discretion in sustaining defendant's objection to the admittance of Bourgeois' deposition.
Second, Plaintiffs state that the trial court erred in not admitting into evidence a brochure describing the Port-Allegheny Asbestos Health Program, a monitoring program conducted by Pittsburgh-Corning, an asbestos product manufacturer not involved in this case. The Defendants objected to its admission as hearsay. Plaintiffs stated that it was admissible under the business record exception to the hearsay rule, discussed in La. C.E. art. 803(6). However, under Art. 803(6), it is essential that a custodian or other qualified witness testimonially explain the record-keeping procedures of the business and thus lay the foundation for the admissibility of the records. Ruddock v. Jefferson Parish Fire Civil Service Bd., 96-831 (La.App. 5 Cir. 1/28/97), 688 So.2d 112. In the instant case, there was no testimony presented to lay a proper foundation for the admission of the brochure. Therefore, the trial court did not err in sustaining defendant's objection to the admittance of the brochure.
Third, Plaintiffs state that the trial court erred in denying admittance of an Avondale questionnaire used to determine if an employee is eligible for its pulmonary medical monitoring program. Plaintiffs presented the Avondale questionnaire during oral arguments on January 5, 2005. The trial court held the certification hearing on July 21 and July 22, 2004 and then took the matter under advisement. No written motions to introduce the questionnaire were filed prior to the oral arguments. All parties presented their arguments and rested their cases on July 22, 2004. In sustaining defendants' objection, the trial judge noted that the purpose of the January 5, 2005 court date was for the parties to present oral arguments and that the hearing on class certification was complete. The record evidences that all parties understood that the certification hearing was complete on July 22, 2004; Plaintiffs' attorney stated, "The record is complete. I rest."
La.C.C.P. arts. 1631 and 1632 give discretion to the trial judge to control the order of trial and procedure in the interest of justice. Mancuso v. Union Carbide Corp., 99-1273 (La.App. 5 Cir. 4/25/00), 762 So.2d 79, 81. The decision to hold open or re-open a case for the production of additional evidence rests within the sound discretion of the trial judge. deBen v. Bobby Collins Seafood, Inc., 00-306 (La. App. 5 Cir. 10/31/00), 772 So.2d 266, 267-268; See La. C.C.P. articles 1631 and 1632. A trial judge's decision whether or not to reopen a case for additional evidence will not be disturbed absent a clear abuse of discretion. Adams v. Allstate, 01-1244 (La.App. 5 Cir. 2/26/02), 809 So.2d 1169, 1173. In the instant case, the certification hearing was complete and the trial judge did not re-open the matter for additional evidence. The Plaintiffs did not file any motions to introduce the questionnaire. *495 The trial judge did not abuse his discretion in sustaining defendants' objection to the admittance of the Avondale questionnaire.
Accordingly, for the aforementioned reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.
NOTES
[1] Subsequently, Acts 1999, No. 989 amended La. C.C. art. 2315 to clarify that medical monitoring is not a valid cause of action. On remand, the trial judge barred retroactive application of the article. Defendants appealed to the Louisiana Supreme Court, which affirmed the trial court's decision and found that retroactive application of the amended article divests asymptomatic employees of vested right to assert causes of action for medical monitoring and violated due process.
[2] See Bourgeois v. A.P. Green Industries, Inc., XXXX-XXXX (La.7/8/98), 716 So.2d 355, 360-361. The Louisiana Supreme Court, finding medical monitoring a compensable cause of action, lists the criteria a plaintiff must prove to prevail in a claim for medical monitoring. The Court notes that the merits of this case were not before it to determine if the instant case satisfied the criteria to support a valid cause of action. Bourgeois v. A.P. Green Industries, Inc., XXXX-XXXX (La.4/3/01), 783 So.2d 1251, 1261. The Court, in a separate opinion, notes that the proposed class had not yet been certified; the Court declined to address the certification issue. Bourgeois v. A.P. Green Industries, Inc., XXXX-XXXX (La.7/8/98), 716 So.2d 355, 357.
[3] The trial court held a two day certification hearing on July 21 and July 22, 2004. The trial judge took the matter under advisement and asked for additional memoranda and oral arguments, which were heard January 5, 2005. The trial judge gave oral reasons for judgment on January 5, 2005.
[4] The trial judge in his reasons for judgment states that he would have to "make a decision whether it's worth the time and expense to certify a class action essentially for some ex-workers, workers who are over age seventy who may or may not be interested in a court-administered fund." The Fifth Circuit in Bourgeois v. A.P. Green Industries, 02-713 (La. App. 5 Cir. 2/25/03), 841 So.2d 902, held that those class members employed by Avondale prior to 1952 would have a negligence claim against Avondale and its Executive Officers. However, those employed between 1952 and 1976 would have a negligence claim against Avondale's Executive Officers, but would only have a Workers' Compensation claim against Avondale. Those employed after 1976 would only have the remedy of a Workers' Compensation claim. Therefore, there may be workers who were employed after 1952 but before 1976 who still have a negligence claim.
[5] The applicable articles, at the time the suit was filed, are La. C.C.P. art. 591 and 592.

La. C.C.P. art. 591 provided:
A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right.
La. C.C.P. art. 592 provided:
One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members.
[6] Fed. Rule 23(b) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
[7] The Uniform Class Actions Act, Section 3(a) (National Conference of Commissioners on Uniform State Laws (1976)) (reprinted at 12 Uniform Laws Annotated, Supp. (1984, p. 21), provides in pertinent part:

(a) In determining whether the class action should be permitted for the fair and efficient adjudication of the controversy, . . . the court shall consider, and give appropriate weight to, the following and other relevant factors:
(1) whether a joint or common interest exists among members of the class;
(2) whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class;
(3) whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;
(4) whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole;
(5) whether common questions of law or fact predominate over any questions affecting only individual members;
(6) whether other means of adjudicating the claims and defenses are impracticable or inefficient;
(7) whether a class action offers the most appropriate means of adjudicating the claims and defenses;
(8) whether the members not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions;
(9) whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding;
(10) whether it is desirable to bring the class action in other forum;
(11) whether management of the class action poses unusual difficulties;
(12) whether any conflict of laws issues involved pose unusual difficulties; and
(13) whether the claims of individual class members are insufficient in the amounts or interest involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.
[8] The current law requires that additionally, a party seeking class certification must also fall within one of the subsections of La. C.C.P. art. 591(B), which provides:

B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
[9] The trial judge, in his oral reasons for judgment, only discusses the requirements of Paragraph A of La. C.C.P. art. 591.
[10] Compare Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.9/9/97), 703 So.2d 542, and the instant case to Daniels v. Witco Corp., 03-1478 (La.App. 5 Cir. 6/1/04), 877 So.2d 1011, where exposure resulted from an isolated incident, a chemical explosion. This Court, reversing the trial court, certified the class, finding that common questions of law and fact predominated over any issues affecting only individuals.
[11] Bourgeois v. A.P. Green Industries, Inc., XXXX-XXXX (La.7/8/98), 716 So.2d 355, 360-361.
[12] See Bourgeois v. A.P. Green Industries, 02-713 (La.App. 5 Cir. 2/25/03), 841 So.2d 902. The Fifth Circuit in this case held that those class members employed by Avondale prior to 1952 would have a negligence claim against Avondale and its Executive Officers. However, those employed between 1952 and 1976 would have a negligence claim against Avondale's Executive Officers, but would only have a Workers' Compensation claim against Avondale. Those employed after 1976 would only have the remedy of a Workers' Compensation claim.
[13] This Court notes, however, that the Louisiana Supreme Court defined the term "significant exposure" as any "exposure greater than normal background levels" in Bourgeois v. A.P. Green Industries, Inc., XXXX-XXXX (La.7/8/98), 716 So.2d 355, 360.