699 So.2d 1110 (1997)
Gail M. CLEMENT, et al.
v.
OCCIDENTAL CHEMICAL CORPORATION.
No. 97-CA-246.
Court of Appeal of Louisiana, Fifth Circuit.
September 17, 1997.
Rehearing Denied October 17, 1997.
*1111 Frederick W. Bradley, Don K. Haycraft, Kathleen F. Hobson, G.C. Slawson, Jr., New Orleans, for Defendant/Appellant.
Roy F. Amedee, Jr., Plaintiffs' Liaison Counsel, Appeal Counsel, LaPlace, Joseph M. Bruno, Plaintiffs' Liaison Counsel, Stephen B. Murray, Linda S. Harang, Plaintiffs' Committee Member, New Orleans, for Plaintiffs' Liaison Committee/Appellees.
Before CANNELLA and DALEY, JJ., and ROBERT J. BURNS, J. Pro Tem.
DALEY, Judge.
This lawsuit stems from the release of chlorine following an explosion at the Occidental Chemical Corporation plant [Occidental] in Taft, Louisiana. On March 19, 1994, at 12:22 a.m. an explosion in the number two purification column at Occidental's Taft Plant caused an immediate release of chlorine and chloroform into the environment, with a small amount of chlorine continuing to leak until approximately 2:57 a.m. Approximately thirteen hundred pounds of chlorine and thirty-four hundred pounds of chloroform escaped into the atmosphere.
This appeal challenges the determination of the geographic boundaries in a class action lawsuit. Defendant, Occidental, appeals alleging the class boundaries are too broad. Plaintiffs appeal, alleging the boundaries are drawn too narrowly. For the reasons that follow, we affirm.
A class certification hearing was held before Honorable Joel T. Chaisson on February 29 and March 1, 1996.
At the start of the hearing, the parties stipulated that:
1. Several thousand individuals have made claims for damages arising out of a release of chlorine from the Oxichem plant in Taft, Louisiana on March 19, 1994. All parties are in agreement that the requirement of numerosity as defined in Article 591 of the Louisiana Code of Civil Procedure is present and that it would be impracticable for all claimants to be joined as parties.
2. The claimants in this matter have made claims for compensatory and punitive damages arising out of their exposure to chlorine. As such, there are issues which are common to all members of the class.
3. The typical claim in this matter is for damages resulting from exposure to chlorine. Other typical claims relate to fear and fright upon hearing the sound of the explosion which led to the chlorine release. Defendant admits having released chlorine, but denies that claimants have been damaged as a result of their exposure.
The only contested issue before the district court at the class certification hearing was the proper definition of the class and geographic scope of the physical area in which persons might have common claims as a result of exposure to the chlorine cloud. Accordingly, the parties presented extensive *1112 fact and expert testimony on the geographic reach of the chlorine release and the likely direction and intensity of any sound and blast of the explosion. They also presented evidence of the likely health effects of exposure.
Eighteen potential class members (claimants) testified at the hearing or by deposition concerning the effects the explosion had on them both physically and emotionally. Claimants were from a large geographic region stretching from the Town of St. James in St. James Parish (northwest of the blast site) to the City of Kenner in Jefferson Parish (southeast of the blast site).
Scientific evidence was presented by both sides. Plaintiffs offered the expert testimony of Francis E. Courtney, a meteorologist. Mr. Courtney created a computer model to demonstrate the likely path taken by the chlorine cloud or plume caused by the explosion. Using meteorological data as a basis for his opinion, Mr. Courtney testified that the cloud moved initially in an east-northeast direction from the Westbank plant across the Mississippi River toward the Shell Norco facility. When it reached Norco, Mr. Courtney testified, the plume traveled in an eastsoutheast direction along the River toward and through the town of Destrehan. He bases his air modeling opinion in part on weather data recorded at the New Orleans International Airport at 2:35 a.m. The majority of other wind readings at the time of the explosion and thereafter were generally from the southwest.
Defendant offered the expert testimony of Dr. Mark Eltgroth, an atmospheric physicist, to establish the geographic boundaries of the exposure cloud. Dr. Eltgroth utilized data from weather stations in St. Charles Parish and generated a computer model to illustrate the probable path and rate of dissipation of the chlorine cloud. Dr. Eltgroth's computer simulation computed minute by minute coordinates which provided a visual representation of the cloud's shape, size and direction. Dr. Eltgroth testified that the cloud dissipated about 51 minutes after the explosion.
Defendant, Occidental, contends that 1 part per million of chlorine was the lowest level that could cause some minimal potential for minor and temporary irritative effects.
Defendant also introduced the deposition of Mr. Thomas Rehm, a professional engineer with a Ph.D. in chemical engineering, who was retained by plaintiffs' counsel to study the blast effects of the Occidental explosion on the surrounding area and on individuals in the area. Mr. Rehm testified in his deposition that, "the seismic effects would have shaken the ground to an extent that a person could perceive it at a maximum distance of 660 feet, from the point of the explosion and that the sound of the explosion would be perceptible to the human ear 5,600 feet or 1.1 mile from the explosion."
The trial court affirmed the class and established three discernable subclasses:
1. PRIMARY PHYSICAL EXPOSURE CLASS
The "Primary Physical Exposure Class" shall be comprised of those individuals who were present between the hours of 12:22 a.m. and 1:15. a.m. on March 19, 1994, within the boundaries indicated below and who were exposed to chlorine of 1 ppm or greater and suffered injury as a result of the release. These boundaries are depicted in Exhibit one (1) attached and made a part hereof, being the isopleth computed by Dr. Eltgroth.
2. EMOTIONAL MINIMAL EXPOSURE CLASS
The "Emotional Minimal Exposure Class" shall be comprised of those individuals who were present between the hours of 12:22 a.m. and 4:45 a.m. on March 19, 1994 within the boundaries indicated below and who were exposed to chlorine of more than 0.2 ppm, and who suffered minimal physical injury, but who suffered emotional injury as a result of the release.
3. SOUND AND BLAST EXPOSURE CLASS
The "Sound and Blast Exposure Class" shall be comprised of those individuals who at 12:22 a.m. were present and/or who sustained property damage and/or emotional damage as a result of the sound and blast and were located within a mile and one-half (1 1/2) radius from the point of the explosion. Plaintiffs and *1113 defendant are to supply the Court with an exhibit of this class which will be marked Exhibit 1-D.
On appeal, Occidental does not contest the PRIMARY PHYSICAL EXPOSURE CLASS definition. However, they contend the trial court erred in the establishment of the EMOTIONAL MINIMAL EXPOSURE CLASS and the SOUND AND BLAST EXPOSURE CLASS. Plaintiffs contend the trial court erred in omitting the Town of Destrehan from the PRIMARY PHYSICAL EXPOSURE class and in restricting the SOUND AND BLAST EXPOSURE CLASS to persons and property located within one and one-half miles from the point of the explosion.

CLASS CERTIFICATION
In determining whether to certify an action as a class action under Louisiana law, the following requirements are necessary:
1. A class so numerous that joinder is impracticable, and
2. The joinder as parties to the suit one or more persons who are
(a) members of the class, and
(b) so situated as to provide adequate representation for absent members of the class, and
3. A "common character" among the rights of the representatives of the class and the absent members of the class.
LSA C.C.P. Articles 591 and 592; McCastle v. Rollins Environmental Services, 456 So.2d 612 (La.1984); citing State ex rel. Guste v. General Motors Corp., 370 So.2d 477 (La. 1978) (on rehearing);Williams v. State, 350 So.2d 131 (La.1977); Stevens v. Board of Trustees, 309 So.2d 144 (La.1975). See also Rivera v. United Gas Pipeline Co., 613 So.2d 1152 (La.App. 5th Cir.1993); Becnel v. United Gas Pipeline Co., 613 So.2d 1155 (La.App. 5th Cir.1993); Olavarriette v. Tonti Properties, Inc., 95-151 (La.App. 5th Cir. 6/28/95), 658 So.2d 25.
All three of the elements must be met for a class action to be appropriate and it is well settled that it is plaintiffs' burden to prove each element, by a preponderance of the evidence. Dumas v. Angus Chemical Co., 25, 632 (La.App.2d Cir. 3/30/94), 635 So.2d 446, writ denied 640 So.2d 1349 (La.1994).
The first requirement, that the persons constituting the class are so numerous as to make joinder impracticable, is often referred to as "numerosity". The numerosity requirement is not met by simply alleging a large number of potential claimants. To establish numerosity, i.e., "a class so numerous that joinder is impracticable", a determination must be made on the facts and circumstances of each individual case. Farlough v. Smallwood, 524 So.2d 201 (La.App. 4th Cir.1988), writ denied, 526 So.2d 810 (La.1988). Although the identification of all potential class members is unnecessary, the party seeking certification should be able to establish a definable group of aggrieved persons.
The second requirement, "proper joinder," is to ensure adequate representation of the absent class members by requiring that one or more of the class members will represent the interests of the entire class adequately.
Third, plaintiffs must establish that a "common character" exists, that is, the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. This requirement restricts the class action to those cases in which it would achieve economies of time, effort, and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. McCastle, supra. When a "common character" of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device: (1) effectuating substantive law; (2) judicial efficiency; and (3) individual fairness. McCastle, supra; Guste, supra; Williams, supra; Stevens, supra.
The fundamental objective of the class action device is the achievement of economies of time, effort and expense. Thus, it must be decided whether the intertwined goals of effectuating substantive law, judicial efficiency and individual fairness would be better *1114 served by class action or some other procedural device such as consolidation.
The acknowledged purpose of the certification hearing in this case was to determine the most likely area that may have been effected by the chlorine release. The trial court is afforded great discretion in class action certification. Pulver v. 1st Lake Properties, Inc., 96-248 (La.App. 5th Cir. 9/18/96), 681 So.2d 965; Elliott v. State, 619 So.2d 137 (La.App. 1 Cir.1993). Unless the trial court has committed manifest error, we must affirm the order. Pulver, supra; Elliott, supra.
A class definition provides the framework against which the court can apply the statutory requirements in order to determine whether a class action may be maintained. The definition of the class should provide a sufficient basis upon which to determine the scope of the class and the propriety of permitting plaintiffs to represent all or a part of it. 2 H. Newburg, Class Actions, § 6.14 (3d ed.1992). The requirement that there be a class capable of definition ensures that the proposed class is not amorphous, vague or indeterminate. See In re Tetracycline Cases, 107 F.R.D. 719 (W.D.Mo.1985). A person should be able to determine readily if he or she is a member of the class. This is essential in order for there to be res judicata effect to any judgment that is rendered. Any subdivision(s) may be based upon geographical subgroupings, subgroupings by type of injury alleged, exposure, and other factors as may become apparent as a case management order is formulated, and the litigation progresses. Ford v. Murphy Oil U.S.A., 94-1218 (La.App. 4th Cir. 8/28/96), 681 So.2d 401.

ASSIGNMENTS OF ERROR
Defendant first asserts that the trial court erred in certifying an "Emotional Minimal Exposure Class", arguing that there was no evidence that the class members' common emotional response was severe and debilitating. Defendant asserts that the individuals in this subclass only allege emotional claims of subjective fear and fright in response to an unpleasant, but physically harmless odor. Four arguments in support of this assignment are given:
1. Louisiana law does not permit damages in cases of mere inconvenience;
2. The mere smell of chlorine does not constitute an injury that would support a claim for emotional damage;
3. There is no evidence of serious mental distress to support the Emotional Minimal Exposure Class; and
4. There is no proof of any "Common Character" with respect to Emotional Minimal Exposure Class.
The first three arguments taken together suggest that no cause of action exists or in the alternative, summary judgment should be granted for claims for subjective fear and fright in response to exposure to minimum amounts of chlorine. The class certification hearing was not a trial on the merits nor was it a hearing on an exception of no cause of action or motion for summary judgment. Evidence was presented to show the occurrence and magnitude of the event.
To be a member of the Emotional Minimal Exposure Class the class definition requires:
1. That you were present within a specified geographic area within a specific period of time;
2. That you were exposed to chlorine; and
3. That you suffered emotional injury and minimal physical injury.
The trial court created this subclass based on its assessments of the evidence. The creation of categories or subclasses is not conclusive evidence of causation and/or damages, but rather general assumption extracted from the evidence which allows the judge to create groupings to assist in the efficient management of the litigation. It was reasonable for the judge to conclude that individual claimants who were situated within the Emotional Minimal Exposure Class boundary lines were on the whole not exposed to as much chlorine gas as those with the Primary Physical Exposure Class, but that those individuals may be entitled to some form of relief.
In a mass tort class action such as this, each class member is entitled to an individual *1115 quantum trial. Claimants within the class geographic boundaries may or may not have been exposed to chlorine depending on their individual circumstance. Some claimants within the geographic boundary may have suffered physical and/or emotional damage, some may not have. These facts are to be determined at a trial on the merits.
Finally, defendant attacks the Minimal Exposure Class on the grounds that there is no common character. The commonality is the geographic location, which according to the scientific testimony, affects the potential rate of exposure.
At this point in the litigation there is no way to determine specifically the degree of exposure and type of injury which pertain to all individual class members. Pursuant to La.C.C.P. art. 593.1, et seq, the trial court has the discretion to amend or recall its certification; enlarge, restrict or redefine the constituency of the class or issues; adopt a management plan for the litigation, including subdividing the action or separating the issues therein raised; and hold separate trials of separate issues. In spite of the additional burdens and responsibilities that the class action places on the court, any error to be made in maintaining a class action should be made in favor of upholding a class action because it is always subject to modification should new developments during the course of the trial so require. Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d 1177, 1183 (La.App. 1st Cir. 1992); McCastle, 456 So.2d at 620-621.
Defendant's second assignment of error asserts that the district court committed error in certifying a "Sound and Blast Exposure" class. Defendant argues that:
1. No evidence showed that persons in that area sustained property damage.
2. There was no evidence that the class members' common emotional response was severe and debilitating.
Here again the defendant attempts to present a no cause of action and/or summary judgment argument in the context of a class certification hearing. Defendant attempts to attack the class by asserting that class counsel has not proven their case on liability or damages during the certification hearing. Plaintiffs' counsel is not required to prove all of the elements of the case for liability and damages during the certification hearing.
Evidence was introduced to demonstrate that the explosion had a physical and emotional impact. Defendant introduced the deposition of Mr. Rehm, who stated that the explosion would have caused property damage within 600 feet of its origin and should have been heard 5,600 feet from the explosion. Additionally, numerous fact witnesses testified they heard the blast and felt its effect more than 1 mile away from the blast.
Defendant cites a number of cases dealing with bystander recovery for emotional distress. This is not a bystander claim. Plaintiffs claim to have felt and/or heard the blast. The evidence presented supports the creation of a class of people who felt and/or heard the blast. Whether these individuals can carry their burden of proving that they sustained damages justifying a monetary award is not before this court.
Plaintiff assigns as error the trial court's failure to include the town of Destrehan in the subclass designated as "EMOTIONAL MINIMAL EXPOSURE CLASS" and the trial court's restricting the "SOUND AND BLAST EXPOSURE CLASS" to those persons and property within a radius of one and one half mile from the point of the explosion.
The trial judge's class definitions indicate that he accepted the calculations of defendant's expert in formulating the likely path that the chlorine plume followed. Dr. Eltgroth's cloud model was adopted by the court for the creation of the geographic boundaries of the PRIMARY PHYSICAL EXPOSURE CLASS. The trial judge expanded those boundaries in creating the MINIMUM EXPOSURE CLASS, but used clearly defined geographic boundaries so as to not divide neighborhoods and create confusion as to who is in or out of the class. The judge, however, concluded that the town of Destrehan, given the scientific evidence, should not be included in the class. Likewise, the judge adopted, with minor variation, Mr. Rheem's theory on blast dynamics and used his opinion to create a blast radius.
*1116 Our review of the record not only fails to show error, but supports the trial court's determination. The trial judge's creation of three subclasses or class categories is warranted given the evidence presented. Further, the trial court set forth the subclasses based on the potential amount of exposure to chlorine.
For the purpose of establishing general categories there is sufficient evidence in the record to support the creation of a three class subgrouping. Accordingly, for the above reasons, the trial court judgement is affirmed.
AFFIRMED.