716 So.2d 435 (1998)
Buddy GRAVER, et al.
v.
MONSANTO COMPANY, INC., et al.
No. 97-CA-799.
Court of Appeal of Louisiana, Fifth Circuit.
June 30, 1998.
Rehearing Denied September 17, 1998.
*436 Darryl J. Foster, Dwight C. Paulsen, III, Nicole D. Martin, Lemle & Kelleher, L.L.P., New Orleans, Donald A. Hoffman, Hoffman Sutterfield, New Orleans, for defendants-appellants.
Patrick W. Pendley, Lawrence G. Gettys, Plaquemine, Donald T. Carmouche, John H. Carmouche, Donaldsonville, Don Almerico, Destrehan, for plaintiffs-appellees.
Before GRISBAUM, C.J., and GAUDIN and DALEY, JJ.
GRISBAUM, Chief Judge.
This appeal concerns the certification of a class action. We affirm in part and amend in part and remand for proceedings consistent with this opinion.

ISSUES
The principal issue presented is simply whether the plaintiffs-appellees meet the requirements of a class action.

FACTS AND PROCEDURAL HISTORY
On March 14, 1996, the plaintiffs, Buddy Graver, George J. Borne, Jr., and Hilman J. Matherne, individually and on behalf of those similarly situated, filed a class action petition against the defendants, Monsanto Company, Inc. and 28 named supervisors at Monsanto. Plaintiffs are retired Monsanto employees seeking compensatory damages for high frequency hearing loss resulting from unprotected exposure to high levels of industrial noises at the Monsanto facility in Luling, Louisiana. The class of individuals, which the named plaintiffs seek to represent, consists of themselves and all other co-workers similarly situated who worked for Monsanto for a period of time between the years 1953-1985 and who were exposed to noise levels in excess of 85 decibels on a daily basis.
On June 12, 1997, the trial judge certified this case as a class action and defined the class as:
All those individuals who worked for the defendant, Monsanto Company, at the Luling Louisiana Plant any period of time during the years 1953 to 1985 and were exposed to noise levels in excess of 85 decibels on a regular basis.
See Order Granting Class Certification. Defendants appeal this Order.

PRELIMINARY MATTERS
Appellees filed a Motion to Strike Exhibits, which are not part of the record on *437 appeal, which are attached to appellants' brief, and all reference thereto of: (1) Exhibit "c"a paper submitted to the 1996 Judicial Conference of the United States Fifth Circuit, and (2) Exhibit "e"a 1990 article from the Journal of Otolaryngology. They argue that these exhibits were not introduced into evidence at the trial court and, thus, cannot be considered by this Court. We recognize that appellate briefs of parties are not part of the record on appeal, and this Court has no authority to consider on appeal facts referred to in appellate briefs, if those facts are not in the record on appeal. Geo Consultants Int'l v. Professional Roofing and Const. Inc., 95-1016 (La.App. 5th Cir. 3/26/96), 672 So.2d 1002. Although we also have consistently held that examination of exhibits attached to an appellate brief, but not offered into evidence at trial is beyond the scope of review for the Court of Appeal, Geo, supra; Davis v. St. Jude Medical Center, Inc., 94-353 (La. App. 5th Cir. 10/25/94), 645 So.2d 771, writ denied, 94-2864 (La.1/27/95), 649 So.2d 387; Coleman E. Adler & Sons, Inc. v. Waggoner, 538 So.2d 1131 (La.App. 5th Cir.1989), the exhibits presented by appellants are not new evidence, nor do they refer to new facts, but merely are cited as persuasive authority to support their legal argument. Appellants purport to attach these exhibits because their counsel did not believe that the articles would be readily available to the Court should this Court wish to peruse them. We, however, find these exhibits to be textual material. Rule 2-15.4 of the Louisiana Uniform Rules, Courts of Appeal, in pertinent part, provides:
(a) Textual Materials. A book, treatise, or other textual material not conveniently available to the court, used as authority during argument by counsel, shall, on request of court, be deposited with the court until the case is decided. By leave of court, a photocopy of the pertinent material may be substituted in lieu of the book, the treatise, or other textual material.
We did not request that the textual material be deposited with us, nor did appellants request leave of court to deposit the material with us. Following the rationale of our jurisprudence, we find that this failure to comply with the appellate court rules leads us to conclude that the textual material was not properly before us. See Dugas v. Travelers Ins. Co., 613 So.2d 1112 (La.App. 3d Cir. 1993). Ergo, the motion to strike the exhibits from appellants' brief is granted.

LAW AND ARGUMENT
Our standard of review in a class action certification is to afford the trial court great discretion. Clement v. Occidental Chem. Corp., 97-246 (La.App. 5th Cir. 9/17/97), 699 So.2d 1110, writ denied, 97-2884 (La.1/30/98) 709 So.2d 718; Pulver v. 1st Lake Properties, Inc., 96-248 (La.App. 5th Cir. 9/18/96), 681 So.2d 965. Unless the trial court has committed manifest error, we must affirm the order. Clement, supra; Pulver, supra.
In determining whether to certify an action as a class action under Louisiana law, the following requirements are necessary as found in our jurisprudence:
1. A class so numerous that joinder is impracticable, and
2. The joinder as parties to the suit one or more persons who are
(a) members of the class, and
(b) so situated as to provide adequate representation for absent members of the class, and
3. A "common character" among the rights of the representatives of the class and the absent members of the class.
La.Code Civ. P. arts. 591 and 592; Clement, supra; Pulver, supra (citing McCastle v. Rollins Environmental Serv., 456 So.2d 612 (La.1984)). All three of the elements must be met, and it is well settled that it is plaintiff's burden to prove each element by a preponderance of the evidence. Clement, supra.
The first requirement, often referred to as "numerosity," is not met by simply alleging a large number of potential claimants. Clement, supra. Although the class must be so numerous that joinder is impracticable and must establish a definable group of aggrieved persons, identification of all potential class members is unnecessary. McGee v. Shell Oil Co., 95-64 (La.App. 5th *438 Cir. 6/28/95), 659 So.2d 812, writ denied, 95-2476 (La.12/15/95), 664 So.2d 457. The trial court found that this requirement was satisfied since appellees' evidence established that at least 100 to 110 persons, employed by appellant, Monsanto, during the years of 1953 to 1985, have demonstrated an Occupational Safety and Health Administration (OSHA) standard threshold shift that meet the class definition. For reasons later assigned, while we agree that a definable group of aggrieved persons has been identified, we do not agree with the trial court's definition of the class.
The second requirement of "proper joinder" is to ensure adequate representation of the absent class members by requiring that one or more of the class members will represent the interests of the entire class adequately. Clement, supra. The trial court found that appellees submitted credible evidence that the class representatives and their attorneys will fairly and adequately protect the interest of the class. The trial court also found that the proposed class counsel are competent attorneys, skilled in complex litigation and class actions, and believed that proposed class counsel will diligently and aggressively pursue the class members' claims.
The third requirement is whether the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Clement, supra. The mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship does not defeat a class action. Clement, supra (citing State ex rel. Guste v. Gen. Motors Corp., 370 So.2d 477 (La.1978) (on rehearing)). Here, the trial court concluded that the questions of law and fact common to the members of the class outweigh any questions affecting only individual members, considering:
a) Whether or not Monsanto knew or should have known as early as the 1950's that excessive noise levels experienced by workers could result in permanent hearing loss;
b) Whether or not Monsanto took any precautions to protect its workers against damages associated with excessive and prolonged exposure to noise at the Monsanto plant in Luling, Louisiana;
c) Whether or not Monsanto provided hearing protection equipment for its employees[;]
d) Whether or not the alleged negligent/intentional lack of care by Monsanto rose to the level of reckless disregard for the safety of its workers;
e) Whether or not Monsanto represented certain information to its workers regarding their hearing loss and its relation to occupational noise exposure;
e)[sic] Whether or not employees who worked for Monsanto from 1953 to 1985 were exposed to noise levels in excess of 85 decibels on a regular basis;
f) Whether [p]laintiffs' conditions will worsen potentially requiring the establishment of a monitoring program for class members[;]
g) Whether Monsanto educated class members regarding the potential consequences of excessive noise exposure and any available protective devices for minimization of exposure[;][and]
h) Monsanto's potential defenses appear applicable to all class members.
See Order Granting Class Certification.
Although appellants rely heavily on the September 9, 1997 Louisiana Supreme Court decision in Ford v. Murphy Oil, USA, Inc., 96-C-2913 c/w 96-C-2917 c/w 96-2929 (La.9/9/97), 703 So.2d 542, class certification is a determination that must be made on the facts and circumstances of each individual case.[1] In Ford, the Louisiana Supreme Court determined that the nature of the claims that were made, the length of time involved, the vast geographical area in which the class members live, and the degree of inconvenience or damages suffered varied greatly as to the individual plaintiffs. Furthermore, *439 the mere finding of the defendant's duty not to pollute was not enough to advance the issues in Ford. The Louisiana Supreme Court also recognized there were four different sources of emissions involved because the claim was against four petrochemical plants located along the Mississippi River from Chalmette to Meraux, Louisiana.
Because we have consistently ruled that the fundamental objective of the class action device is the achievement of economies of time, effort, and expense, it must be decided whether the intertwined goals of effectual substantive law, judicial efficiency, and individual fairness would be better served by class action or some other procedural device such as consolidation. See Clement, supra; Pulver, supra; and McGee, supra. The trial court concluded that the questions of law and fact common to the members of the class outweigh any questions affecting only individual members and that a class action is the preferred procedure to equitably and efficiently adjudicate this controversy. We agree.
Here, even though not all class members' claims arise from the same event, all claims arise from the same practice or course of conduct allegedly exhibited by Monsanto over the years. Appellees and class members' contentions are not varied and only concern the negligence of Monsanto by exposing its employees to high level industrial noises without proper ear protection. Appellees allege that Monsanto had the duty not only to supply the proper ear protection for appellees and class members, but also had a duty to instruct and educate them about the proper use of ear protection and the ultimate effects of not wearing ear protection. Finally, not four individual plants spread over a larger geographical area, but one facility, the Monsanto plant in Luling, is of concern in this case.
In the final analysis, we agree that the requirements to certify a class action were met and find that the trial court did not commit manifest error and abuse its discretion in certifying the class.
While we find that the trial court did not err in certifying a class, appellants correctly contend that the class definition is impermissibly vague and does not set forth a definable group of aggrieved persons. Accordingly, we will redefine the class, using an objective criteria which was established during the certification hearing.
Appellees sought certification of a class of workers with occupationally induced hearing loss. The trial court certified a class defined as:
All those individuals who worked for the defendant, Monsanto Company, Inc., at the Luling, Louisiana plant [during] any period of time during the years 1953 to 1985 and were exposed to noise levels in excess of 85 decibels on a regular basis.
See Order Granting Class Certification. This class definition is vague and not self defining because it is not clear what being "exposed to noise levels in excess of 85 decibels on a regular basis" means. The class definition could potentially cover everyone who worked at the plant, because they were exposed to loud noise, or to very few people who worked at the plant, depending on how exposure on a "regular basis" is interpreted.
The 1997 Amendments to La.Code Civ. P. art. 591, which set forth the prerequisites for maintaining class actions, requires that "The class is or may be defined objectively in terms of ascertainable criteria[.]" La.Code Civ. P. art. 591(A)(5). We recognize that subsection (A)(5) of this code article was not in effect at the time the trial judge certified the class in this case; however, procedural laws may be applied retroactively, unless there is a legislative expression to the contrary. La. Civ.Code art. 6. Accordingly, we will rely on the most recent version of La. Code Civ. P. art. 591 in ruling on this matter and require that the class be defined by objective criteria.
The record contains evidence of an objective criteria, which can be utilized to define the class. Dr. Douglas A. Swift, an expert in the field of Occupational Medicine testified on behalf of the appellants at the certification hearing. Dr. Swift identified certain Monsanto employees that he determined suffered an occupationally related hearing loss. Dr. Swift explained that, in 1982, OSHA put forth a standard for the time period for *440 which an individual could be exposed to certain decibel levels. The general rule is that noise exposure should not exceed 85 decibels over an eight-hour time-weighted average. Dr. Swift further explained that OSHA set forth a criteria, known as the standard threshold shift, which should be used as a measure to detect the earliest possible change in someone's hearing. The standard threshold shift is defined as a 10-decibel average shift over the frequencies of 2,000, 3,000, and 4,000 Hz between the baseline audiogram and any subsequent audiogram.
On an annual basis, each Monsanto Company employee underwent a hearing capacity test. Employees' medical records indicate which employees suffered a standard threshold shift in hearing capacity during employment at Monsanto. These medical records establish an objective criteria that can be used by the potential class members and appellants to determine inclusion or exclusion from the class. Utilizing this criteria will enable the class to be manageable and include past employees with objective claims, thereby avoiding the difficult management and legal problem of countless meritless claims, which too often accompany class action litigation.
For the reasons stated, the trial court's class definition is amended and redefined as:
All those individuals who worked for the defendant, Monsanto Company, Inc., at the Luling, Louisiana plant for any period of time during the years 1953 to 1985 and experienced hearing loss identified by a standard threshold shift, as defined by OSHA, on any audiogram performed during their employment with Monsanto between the years 1953 and 1985.
For the foregoing reasons, the trial court's certification of the class is affirmed as amended, and this matter is remanded for proceedings consistent with this opinion. All costs of this appeal are to be assessed against the appellants.
AFFIRMED AS AMENDED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] The Louisiana Supreme Court reversed class certification in a mass tort claim alleging property damage and personal injury because of exposure to emissions of four petrochemical plants over a four-year time period.