EDWIN A. LOMBARD, Judge.
 

 | j Plaintiffs, who were all certified, tenured, or permanent public school employees in August 2005, filed suit against Defendants, the Orleans Parish School Board (OPSB), the State of Louisiana, the State Board of Elementary and Secondary Education, and the Recovery School District (collectively referred to as the “State Defendants”), alleging that they were unlawfully terminated from their positions following Hurricane Katrina. After a hearing, the trial court certified the case as a class action on December 10, 2008 and Defendants filed this timely appeal. Because we find that Plaintiffs have satisfied all of the statutory requisites for a class action, we affirm the decision of the trial court.
 

 Facts and Procedural History
 

 Two months after Hurricane Katrina devastated the city of New Orleans, several public school employees, including Eddy Oliver, a public school principal, Oscarlene Nixon, a para-professional/teacher’s aide, and Mildred Goodwin, a custodian, originally filed this action as a Petition for Injunctive Relief and Declaratory Judgment seeking to protect their pre-Katrina employment at public schools which were being reopened as Charter Schools. A temporary restraining order was denied and petitioners amended their lawsuit to seek additional relief.
 

 12Prior to the scheduled hearing for a preliminary injunction, Governor Kathleen Blanco called a special session of the Louisiana Legislature, during which the Legislature amended the State’s education statutes to allow the immediate takeover of all schools deemed “failing” by the New Orleans Public Schools pursuant to Act 35.
 
 *194
 
 (La. R.S. 17:1990; Act 35, First Extraordinary Session, effective. Nov. 30, 2005). This Act allowed the mass takeover of 102 New Orleans Public Schools by the Louisiana State Department of Education and the Louisiana Recovery School District under the direction and control of the State Board of Elementary and Secondary Education (BESE).
 

 In December 2005, the OPSB passed Resolution No. 59-05 upon the advice and recommendation of its state-selected and controlled financial consultants, the New York-based firm of Alvarez & Marsal. The Resolution called for the termination of all New Orleans Public School employees placed on unpaid “Disaster Leave” after Hurricane Katrina, to take effect on January 31, 2006.
 
 [1]
 
 On the day that the mass terminations were scheduled to take place, Plaintiffs amended their petition to seek a temporary restraining order preventing the OPSB from terminating all of its estimated 7,500 current employees at the close of business on that day. The trial court granted the TRO and this Court and the Louisiana Supreme Court denied writs on the issue. The TRO was later converted into a preliminary injunction that restrained, enjoined and prohibited the OPSB, et al, from “terminating the employment of Plaintiffs and other New Orleans Public School employees until they are afforded the due process safeguards provided in |3the Orleans Parish School Board’s Reduction in Force Policy 4118.4.” Nevertheless, Plaintiffs and thousands of other employees were terminated on March 24, 2006, after form letters were mailed to the last known address of all employees of record as of August 29, 2005.
 

 Ultimately, while plaintiffs were not granted injunctive relief in the form of employment in the new Recovery School District, the trial court ruled that they had stated a cause of action for damages against all defendants. Defendants did not challenge this judgment. More than forty days after the trial court’s ruling that the plaintiffs stated a cause of action, the State Defendants filed a pleading styled as a “Motion for Reconsideration of State Defendants’ Exception of No Cause of Action Concerning the Constitutionality of Act 35.” The trial court denied the motion and the Fourth Circuit Court of Appeal denied Supervisory writs.
 

 In March 2007, Plaintiffs filed a Fourth Amending and Supplemental Petition seeking class action certification. In response, the OPSB filed a motion to strike Plaintiffs’ entire pleading. The State Defendants filed another Exception of No cause of Action concerning the same constitutional issues raised previously regarding Act 35. The trial court did not rule on the constitutionality of Act 35 and rejected all merit-based oral arguments as procedurally improper. The State Defendants’ Supervisory Writ was denied by this Court as well as the Louisiana Supreme Court.
 

 On December 10, 2008, following a 3-day hearing that had been held in May 2008, the district court granted plaintiffs’ motion to certify the case as a Class Action. It is from this judgment that Defendants now appeal.
 

 Specifications of Error
 

 The Defendants filed individual briefs specifying errors allegedly made by |4the
 
 *195
 
 trial court. The State Defendants contend that the trial court erred in certifying this case as a class action, and it asserts three specifications of error in support of its position. The State Defendants specifically argue that the trial court erred in:
 

 1. failing to apply the correct legal standard in evaluating whether the plaintiffs, in then- class certification efforts against the State, met the requirements of commonality, typicality, numerosity, and adequacy, and whether the predominance/superiority test was met;
 

 2. finding that the plaintiffs met their burden of proof against the State concerning commonality, typicality, numerosity, adequacy, and the predominance/superiority test for class certification; and
 

 3. failing to admit into evidence at the class certification hearing the testimony of Dane Ciolino, one of the State’ experts, and erred in admitting into evidence.
 

 While adopting the arguments made by the state Defendants on appeal, the OPSB further argues, in its brief, that the trial court erred in certifying the class by failing to recognize that the claims of the class representatives and putative class members are so unique that they can only be assessed on a case by case basis.
 

 In addition to the specifications of error delineated above, the State Defendants filed a separate memorandum in support of exceptions of no right and no cause of action. In these Exceptions, the State Defendants contend that the class action should be dismissed with prejudice on the basis that Plaintiffs have no cause or right of action against them since Act 35 was held to be constitutional by the Louisiana First Circuit Court of Appeal in
 
 United Teachers of New Orleans v. State Board of Elementary and Secondary Education,
 
 07-0031 (La.App. 1 Cir. 3/26/08), 985 So.2d 184, 192 and that Plaintiffs have no other viable claims against Rthem that survive after
 
 United Teachers and Triplett, et al. v. Board of Elementary and Secondary Education,
 
 09-0691 (La.App. 1 Cir. 7/13/09), 21 So.3d 401.
 

 Law & Discussion
 

 At the outset, we note that the State Defendants have urged and reurged the same exceptions of no right and no cause of action in the trial court, this Court, and the Louisiana Supreme Court, without success. The State Defendants argue that it is this Court’s duty to determine whether Plaintiffs can state a viable cause of action against them in light of
 
 United Teachers
 
 (holding that any impairment of the contracts between the United Teacher’s Union and the OPSB, as a result of Act 35, “was not of a constitutional dimension”) and
 
 Triplett
 
 (wherein the court denied all constitutional and statutory attacks brought by a group of parents, citizens, and teachers from the East Baton Rouge School District after eight schools were transferred to the RSD pursuant to Act 35). Despite the fact that the state Defendants’ “Exception of No Cause of Action Concerning the Constitutionality of Act 35” has been denied three times by the trial court, twice by this Court and once by the Louisiana Supreme Court, the State Defendants argue that based on
 
 United Teachers
 
 and
 
 Triplett,
 
 their newly filed exceptions are now properly before this Court again as an integral part of our review of the class certification order. We disagree for several reasons.
 

 First, the First Circuit’s decisions in
 
 United Teachers
 
 and
 
 Triplett
 
 are not binding on this Court. Moreover, the fact that the First Circuit, in
 
 United Teachers
 
 and
 
 Triplett,
 
 found that the plaintiffs in those cases had no cause of action against the defendants under the particular facts of those cases, does not persuade us that the Plaintiffs in this case possess no viable cause of action against the State Defen
 
 *196
 
 dants under the facts of this case. Moreover, the question of whether Act 35 |fiis constitutional or not is irrelevant, since Plaintiffs voluntarily severed their claims regarding the constitutionality of Act 35 from the class action claims in September 2006. The trial court has previously entertained all of the State Defendants’ arguments that Plaintiffs have no viable cause of action and has denied them all. Importantly, the State Defendants failed to seek supervisory writs after the trial court’s September 1, 2006 ruling that Plaintiffs have stated a cause of action against the State Defendants as it pertains to interference with a contract and or/impairment of a contractual obligation between the Orleans Parish School Board. We decline to revisit this same issue again on appeal.
 

 Furthermore, contrary to the arguments made by the State Defendants, is not necessary at this juncture for Plaintiffs to prove the facts of the underlying cause of action. Class certification is purely procedural.
 
 See, e.g., Davis v. Jazz Casino Co., et al.,
 
 03-0005, p. 15 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 891. Therefore, the issue at a class certification hearing is whether the class action is procedurally preferable, not whether any of the plaintiffs will be successful in urging the merits of their claims.
 
 Display South, Inc. v. Express Computer Supply, Inc.,
 
 06-1137, p. 7 (La.App. 1 Cir. 5/4/07), 961 So.2d 451, 455,
 
 citing Singleton v. Northfield Ins. Co.,
 
 01-0447 (La.App. 1 Cir. 5/15/02), 826 So.2d 55, 62. When reviewing the trial court’s ruling regarding class certification, we do not consider whether plaintiffs’ claims state a cause of action or have substantive merit, or whether plaintiffs will ultimately prevail on the merits.
 
 Munsey v. Cox Communications of New Orleans, Inc.,
 
 01-0548, p. 5 (La.App. 4 Cir. 3/20/02), 814 So.2d 633, 636. Rather, our task is to examine Plaintiffs’ legal claims and to determine only whether a class action is the appropriate procedural device in light of established Louisiana criteria.
 
 Id.
 
 Thus, the sole issue to be decided in this appeal is whether |7the district court abused its discretion in certifying this case as a class action.
 

 Class Actions in General
 

 The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable'not only to the representatives who bring the action, but to all others who are “similarly situated,” provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class.
 
 Chiarella v. Sprint Spectrum LP,
 
 04-1433, p. 16 (La.App. 4 Cir. 11/17/05), 921 So.2d 106, 118,
 
 citing Ford v. Murphy Oil U.S.A., Inc.,
 
 96-2913, 96-2917, 96-2929 (La.9/9/97), 703 So.2d 542, 544.
 

 In Louisiana, the class action certification procedure is governed by Louisiana Code of Civil Procedure articles 591-597. The prerequisites for maintaining a class action are found in article 591. Those requirements have generally been summarized as: numerosity, commonality, typicality, the adequacy of the representative parties to protect the interest of the class, an objectively definable class, the predominance of common issues, and the superiority of the class action procedure.
 
 [2]
 

 
 *197
 
 |8In order to obtain class certification, the plaintiffs must meet all of the requirements of article 591(A) and also satisfy at least one of the subsections of article 591(B).
 
 Oubre v. Louisiana LCPIC Fair Plan,
 
 07-66, p. 6 (La.App. 5 Cir. 5/29/07), 961 So.2d 504, 508,
 
 writ denied,
 
 07-1329 (La.9/28/07), 964 So.2d 363,
 
 citing, Daniels v. Witco Corp.,
 
 03-1478 (La.App. 5 Cir. 6/1/04), 877 So.2d 1011, 1014,
 
 writ denied,
 
 04-2287 (La.11/19/04), 888 So.2d 205. The burden of establishing that the statutory criteria are met falls on the party seeking to maintain the action as a class action.
 
 Oubre,
 
 961 So.2d 504, 508.
 

 The customary standard of review for a trial court’s ruling on a motion for class certification is tri-parte. Factual findings are subject to the manifest error standard, but the trial court’s ultimate decision of whether or not to certify the class is reviewed by the abuse of discretion stan
 
 *198
 
 dard.
 
 Brooks v. Union Pacific Railroad Company,
 
 08-2035, p. 10 (La.5/22/09), 13 So.3d 546, 554. The question of whether the district court applied the correct legal standards in determining whether to certify the class is reviewed de novo.
 
 Id.
 

 A trial court has wide discretion in deciding whether or not to certify a class.
 
 Chiarella,
 
 04-1433 at p. 16, 921 So.2d at 118. Any error to be made in deciding class action issues should be in favor of and not against maintenance of the class action, because a class certification order is subject to modification if later developments during the course of trial so require.
 
 McCastle v. Rollins Environmental Services of Louisiana, Inc.,
 
 456 So.2d 612, 620 (La.1984).
 

 In the instant case, the trial judge found that Plaintiffs’ claims meet all of the criteria set forth in Louisiana Code of Civil Procedure article 591(A), namely numerosity, commonality, typicality, adequacy of representation, and an objectively definable class. The trial judge also found that the elements of predominance and superiority set forth in Louisiana Code of Civil Procedure article 591(B)(3) have been satisfied. After reviewing the record before us, including the petitions, the arguments of the parties, the testimony at the certification hearing and the trial court’s reasons for judgment, we find that there was a sufficient factual basis for the trial court to certify this class.
 

 |in
 
 Numerosity
 

 The first requirement for certifying a class is numerosity. To satisfy this requirement, Plaintiffs must establish that the members of the class are so numerous that joinder of those members would be impracticable. No set number of putative plaintiffs has been established in order to fulfill the numerosity requirement for a class action.
 
 Davis v. Jazz Casino Co., LLC,
 
 03-0005, p. 7 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 887. The determination of numerosity is based in part upon the number of putative class members, but is also based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claims.
 
 Id.,
 
 at 888.
 

 At the certification hearing in the instant case, New Orleans Public School Superintendent, Mr. Darryl Lilbert, testified that over 7,500 employees of the OPSB were placed on disaster leave without pay and terminated in one common occurrence. Evidence was also introduced that 1,176 employees of the OPSB retired after August 29, 2005. The trial court found it possible that some of these employees may claim that they retired in view of a threat of termination. In determining that the numerosity requirement was met, the court found that there are at least 5,000 potential class members and as many as 7,500 class members and that “this large number of potential class members surely produces too many plaintiffs to join in a manner conducive to judicial economy.” We find no manifest error in this finding.
 

 Commonality
 

 A showing of commonality of questions of law and fact among the class is the second prerequisite in certifying the class. The test for commonality requires only that there be at least one issue the resolution of which will affect all or a | iisignificant number of putative class members.
 
 Watters v. Dept. of Social Serv.,
 
 05-0324, p. 15 (La.App. 4 Cir. 4/19/06), 929 So.2d 267, 278,
 
 citing, Duhe v. Texaco, Inc.,
 
 99-2002 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1078.
 

 
 *199
 
 In this case, the trial court found that the claims of class members are based on allegations of a common course of conduct — termination from gainful employment and/or interference with individual written and/or statutory contracts of employment — implemented by a common set of documents. The court heard testimony from witnesses that were employed by the OPSB as permanent employees up to the commencement of the 2005-06 school year, were placed on disaster leave, without pay, effective March 24, 2006, and allegedly suffered economic losses and emotional distress as a result of being terminated from employment. The trial court thus determined that the claims of the class members have a sufficient common character and are derived from a common source, such that the requirement of commonality was satisfied. Considering the testimony and evidence regarding this common issue, we cannot say that the trial court erred in finding that the commonality requirement had been met.
 

 Typicality
 

 The third prerequisite in certifying the class is typicality. The element of typicality requires that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members.
 
 Davis, supra.,
 
 03-0005, p. 9, 864 So.2d 880, 890.
 

 At the certification hearing, each of the class representatives testified about the type and nature of their claims. They-all testified that they experienced economic losses and emotional distress as a result of wrongful termination and breach/interference. with their employment contracts with the OPSB. All of the | |2class representatives testified that they were employed by the OPSB prior to August 29, 2005 and that they were placed on disaster leave, without pay, retroactive to August 29, 2005. According to their testimony, no one was excluded from the school board resolution to place all employees on OPSB disaster leave, and the decision applied to all employees. One common letter was written to them by Phyllis Landrieu advising them of the termination of all OPSB employees and another common letter was written to them by the superintendent advising of the termination of all OPSB employees.
 

 The trial court found that the testimony of the class representatives was credible and that their testimony about the nature and type of their claims are typical of all persons who were employed as permanent employees of the OPSB and then were terminated by the OPSB in one common event. We find no error in the trial court’s finding on this issue.
 

 Adequacy of Representation
 

 The existence of representative parties who will adequately and fairly protect the interests of all those in the class is the fourth prerequisite for certifying a class. This element requires that the proposed class representatives prove that their claims are a cross-section of, or typical of, the claims of all class members.
 
 Johnson v. Orleans Parish School Bd.,
 
 00-0825 (La.App. 4 Cir. 6/27/01), 790 So.2d at 734.
 

 During the hearing, each proposed class representative testified before the court about their personal and family background, their work background, their experience as an employee of the OPSB prior to their termination and the hardships and problems they claim that they each suffered as a result of the termination of their employment. Each of the proposed class representatives was | ^questioned about the nature of his/her claims and their understanding of his/her role as a class representative. The district
 
 *200
 
 court found that the proposed class representatives were credible, forthright in their answers and possessed a good sense of their role in the case.
 

 The Defendants argue that potential conflicts of interest between class members who may be competing against each other for jobs creates a “nonconsenta-ble conflict of interest in representing class members.” However, Plaintiffs are no longer seeking injunctive and/or declaratory relief (i.e. reinstatement of their employment). Rather, Plaintiffs are seeking only monetary damages. Therefore, there is no conflict of interest between the class members and the attorneys’ representation of the class as a whole. Accordingly, we find no manifest error in the trial court’s finding that the requirement of adequacy of representation was satisfied.
 

 Class Definition
 

 The final prerequisite under article 591(A) is that the class be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. The parties seeking certification must be able to establish a definable group of aggrieved persons based on objective criteria derived from the operative facts of the case.
 
 Chiarella,
 
 supra, 04-1433 at p. 18. The purpose of the class definition requirement is to ensure that the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if he/she is a member of the class.
 
 Clement v. Occidental Chemical Corp.,
 
 97-246 (La.App. 5 Cir. 9/17/97), 699 So.2d 1110, 1113. So.2d at 1113.
 

 114In this case, the trial court defined the class as:
 

 All current or former employees of the Orleans Parish School Board prior to Hurricane Katrina [August 29, 2005], who were terminated and/or forced to retire under the threat of termination from employment by the Orleans Parish School board, and claim to have sustained economic injury and/or mental anguish and emotional distress as a result of termination and/or being forced to retire under the threat of termination of employment.
 

 The class definition goes even further to objectively identify the class members and divide them into four subclasses: (1) Tenured, Certified Teachers; (2) Tenured, Certified Teachers Promoted to Positions of Higher Salary; (3) Employees with “permanent status” other than classroom teachers; and (4) Employees forced to retire under duress. Moreover, the court specifically excluded from the class casual, non-permanent or non-tenured employees, who may have been terminated by the OPSB at all times relevant to this litigation, finding that the claims of such a person are too dissimilar from the claims of those, like the proposed class representatives, who enjoyed property rights in their employment with the OPSB conferred either by statute or by written contract.
 

 Plaintiffs argue that the trial court went to great lengths to objectively define the class with specificity so that only those OPSB employees with property rights in their jobs would be included in the class. We agree. Defendants do not argue that the class is not defined objectively in terms of ascertainable criteria. Accordingly, we find that he proposed class is sufficiently defined in order to give potential class members enough information to decide whether they are included within the class and to enable potential class members to decide whether to opt out of the class.
 

 
 *201
 
 Based on the foregoing, we find the Plaintiffs have fulfilled the statutory requirements of Louisiana Code of Civil Procedure article 591(A). We must now 115turn to the question of whether at least one of requirements of article 591(B) has been met.
 

 La.Code Civ, Proc. Art. 591(B)
 

 The second level of analysis for determining whether to certify a class action is governed by La.Code Civ. Proc. art. 591(B). A court reaches this level of analysis only if it finds that all the requirements of article 591(A) have been satisfied. Only one of the requirements of Section (B) must be met. In this case, the trial court found that the plaintiffs satisfied 591(B)(3), which requires the court to find that questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods of adjudicating the controversy.
 

 La.Code Civ. Proc. Art. 591(B)(3)
 

 Predominance
 

 The Louisiana Supreme Court recently addressed the relationship between questions of liability and the propriety of class certification in
 
 Brooks v. Union Pacific Railroad Company,
 
 08-2035 (La.5/22/09), 13 So.3d 546. In
 
 Brooks,
 
 the Court held that “[a]n inquiry into predominance tests ‘whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.’ ”
 
 Id.,
 
 p. 9. The process prescribed by the Court in making this determination is to identify the substantive issues that will control the outcome, to assess which issues will predominate, and then to determine whether the issues are common to the class.
 
 Id.
 
 This process is ultimately meant to prevent the class from degenerating into a series of individual trials.
 
 Id.
 
 According to the
 
 Brooks
 
 court, in order to meet the common cause requirement, each member of the class must be able to prove | ^individual causation based on the same set of operative facts and law that would be used by any other class member to prove causation.
 

 Here, the trial court found not only that the class members claims are of a common nature, but also that their claims regarding termination from employment originate from the same common source — the conduct of Defendants who by act or omission caused the termination of the employment of all the class members. Therefore, the trial court found opined that if any defendant is found to be liable to just one class member due to the Defendant’s role in causing or contributing to the class member’s termination-related complaints, then the finding of liability as to that defendant should be binding on that defendant as to all class members, without the need for any other class member to have a trial on the merit of the same issues.
 

 On appeal, Defendants argue that the trial court committed manifest error in finding that the predominance requirement had been satisfied in this case. Defendants aver that it is obvious that a class trial in this case would devolve into a series of individual trials regarding individual claims and defenses. They argue that separate proof will be needed on alleged “forced” terminations than on “outright” terminations and that separate damages will need to be considered for each group because retirees’ rights differ from those of terminated employees. Finally, Defendants argue that each putative class member has suffered differing levels of emotional distress and varying degrees of economic loss.
 

 The plaintiffs, on the other hand, assert that there are many common issues of law and fact and that these common issues clearly predominate over any individual issues surrounding Plaintiffs’ damages.
 
 *202
 
 Plaintiffs argue that the only individualized issues among the class members are the degree of damages. Thus, according to Plaintiffs, once there is a common liability trial, the only individual 117analysis left will be causation/damages, which can be conducted without the need for repeated trials as to liability.
 

 We find no error in the trial court’s finding that Plaintiffs have identified a common issue and that the common issue predominates over any of the plaintiffs’ individual issues. All of the class members’ claims are founded on an assertion of Defendants’ unlawful termination of their employment after Hurricane Katrina. This pivotal issue is common to all class members. Moreover, the acts or omissions of the Defendants created a set of circumstances which injured all of the class members and that this pivotal issue is common to all plaintiffs and predominates over any individual issues which may be presented by the circumstances surrounding the claim of an individual class member.
 

 Of course, there may be differences in the amount of damages owed to an individual Plaintiff based on the varying pay scale and benefits offered, but in
 
 Brooks,
 
 the Louisiana Supreme Court noted that it is not necessary that the amount or extent of damages be common to all class members; rather, “the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification.”
 
 Bartlett v. Browning-Ferris Industries Chemical Services, Inc.,
 
 99-0494 (La.11/12/99), 759 So.2d 755, 756. Thus, we find that the predominance requirement has been satisfied in this case.
 

 Superiority
 

 We also find that in this case, the requirement of superiority has been met, pursuant to Louisiana Code of Civil Procedure article 591(B)(3). The district court stated that the class action procedure is superior because any expert testimony would be common to all class members and that trying the Defendants’ | pliability and fault in one common trial is superior to all the other available procedural methods of either mass joinder and consolidation, or repetitive individual trials. We agree.
 

 When a common character of rights exists, a class action is superior to other available adjudicatory methods in effectuating substantive law, and promoting judicial efficiency and individual fairness.
 
 Davis v. Jazz Casino Co., LLC, supra,
 
 03-0005, p. 11. If the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether some other procedural device would better serve these goals.
 
 Id.
 

 Here, each plaintiffs claim involves whether the Defendants unlawfully terminated him or her after Hurricane Katrina. Trying all the potential plaintiffs’ claims separately could result in non-uniformity in the application of this law and in consideration of Defendants’ anticipated defenses. Thus, uniformity in this case can best be obtained by employing the class action procedure. As plaintiffs correctly argue, the prosecution of as many as 7,500 separate lawsuits would pose a significant possibility of inconsistent adjudications on these common issues and could result in members of the class being negatively impacted by a decision from another court and impair their ability to pursue their claim. Accordingly, in this case, the class action procedure is a superior method under the circumstances to ensure individual fairness and to promote judicial efficiency.
 

 
 *203
 
 The trial court exercised its discretion in determining whether class certification was superior to other available methods for the fair and efficient adjudication of the controversy. The trial court performed the rigorous analysis required by
 
 Brooks
 
 in determining whether this proposed class action meets the requirements imposed by law. The trial court actively inquired into every aspect ofjpjthe case and explored the facts and evidence beyond the pleadings. Considering the facts introduced at the class certification hearing and in the record before us, we find that the trial court did not err in finding that a class action is the superior procedural device for adjudicating this matter.
 

 Finally, the State Defendants argue that the trial court erred in failing to admit into evidence at the class certification hearing the testimony of Dane Ciolino, an attorney and legal professor. Professor Ciolino was retained by the State Defendants to provide expert testimony regarding whether the joint representation of all putative class members falls within the standard of care and conduct governing Louisiana lawyers. The trial court excluded Professor Ciolino’s testimony because the court “did not require the assistance of a legal expert in the field of legal ethics to enable it to come to a proper conclusion regarding adequacy of class counsel.”
 

 The testimony of an expert, with the attendant right to express opinions and conclusions, is proper for the purpose of assisting the court only in those fields in which the court lacks sufficient knowledge to enable it to come to a proper conclusion without such assistance.
 
 Clesi, Inc. v. Quaglino,
 
 137 So.2d 500 (La.App. 4 Cir. 1962). Here, the court felt that it possessed sufficient knowledge in the area of legal ethics and that Professor Ciolino’s testimony would not be necessary. We find no abuse of the trial court’s discretion in its decision to exclude Professor Cioli-no’s testimony.
 

 Conclusion
 

 In conclusion, we find no manifest error in the trial court’s factual findings and no abuse of discretion in the trial judge’s determination that this case meets all of the requirements of Louisiana Code of Civil Procedure Article 591 for 12ncertification of this matter as a class action. Of course, the trial court always has the authority to re-visit or modify its decision regarding class certification if later developments during the course of trial so require. See
 
 Johnson v. E.I. Dupont deNemours and Co.,
 
 721 So.2d at 44. For the foregoing reasons, we affirm the trial court’s judgment, granting Plaintiffs’ motion for class certification, defining the class, and naming Antoinette Aubry-Guillory, Karen Marks, Gwendolyn Ridgley, Lois Lockhart, Linda Pichón, Barbara Moore and Cynthia Jordan as class representatives.
 

 AFFIRMED.
 

 [1]
 

 . "A resolution of the Orleans Parish School Board to authorize the Acting Superintendent and the staff members of Alvarez and Marsal to implement a Reduction in Force 'WHEREAS, the Orleans Parish School Board recognizes that due to the passage of Senate Bill 49, approximately 102 schools formerly under the jurisdiction of Orleans Parish School Board, will now be under the jurisdiction of the State of Louisiana, through the Recovery School District.’ "
 

 [2]
 

 . Article 591 in its entirety provides:
 

 A. One or more of the members of a class may sue or be sued as representative parties
 
 *197
 
 on behalf of all, only if:
 

 (1) The class is so numerous that joinder of all members is impracticable;
 

 (2) There are questions of law or fact common to the class;
 

 (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;
 

 (4) The representative parties will fairly and adequately protect the interests of the class; and
 

 (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
 

 B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
 

 (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
 

 (a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 

 (b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 

 (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 

 (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
 

 (a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
 

 (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
 

 (c) The desirability or undesirability of concentrating the litigation in the particular forum;
 

 (d) The difficulties likely to be encountered in the management of a class action;
 

 (e) The practical ability of individual class members to pursue their claims without class certification;
 

 (0 The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
 

 (4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
 

 (C) Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class. La.Code Civ. Proc. art. 591.